JOHNSON et al. v. NORRIS et al.

(Circuit Court of Appeals, Fifth Circuit. October 2, 1911.)

No. 2,110.

1. BANKRUPTCY (§ 324*)—INTEREST.

The rule in bankruptcy for the computation of interest on claims to the date of filing the petition has no application to a solvent estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 324.*]

2. BANKRUPTCY (§ 438*)—BANKRUPTCY ACT—DISTRIBUTION OF ESTATE.

Bankr. Act July 1, 1898, c. 541, § 66, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3348), providing for distribution of the bankrupt's entire estate among his creditors, and authorizing only a return to the bankrupt of unclaimed dividends, has no application to a surplus remaining after payment of all claims and expenses in full.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 438.*]

3. BANKRUPTCY (§ 438*)—ADMINISTRATION—PAYMENT OF DEBTS IN FULL—SURPLUS.

After paying all debts of the bankrupt in full, including interest due before and subsequent to the filing of the bankruptcy petition, any surplus then remaining was payable to the bankrupt without statutory authority.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 438.*]

4. BANKRUPTCY (§ 324*)—INTEREST ON CLAIMS.

Where, in voluntary proceedings by a bankrupt partnership and the individual partners, there was a surplus arising from the individual estates of the partners after paying all debts and interest up to the filing of the petition, the creditors, having proved interest-bearing claims in the first instance, were entitled to a distribution, out of such surplus, of interest from the date of the filing of the petition until the debts were paid before any part of the surplus should be returned to the bankrupts.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 324.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. BANKRUPTCY (§ 324*)—DISCHARGE—EFFECT.
   A discharge in bankruptcy, while relieving the bankrupt of further liability, did not relieve the funds in the hands of the trustees or affect the claim of creditors thereon to interest accruing subsequent to the filing of the petition.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 324.*]

*(Syllabus by the Court.)*

6. VOLUNTARY BANKRUPTCY—SURPLUS.
   When there is a surplus of a voluntary bankrupt's estate, after the payment of all proved claims and interest thereon to the date of the filing of the petition, such surplus should be applied first to the payment of the interest accruing on the claims subsequent to the filing of the petition, and the remainder only returned to the bankrupt.

Petition to Revise a Decree of the District Court of the United States for the Southern District of Texas.

In the matter of bankruptcy proceedings of Vineyard, Walker & Co. On petition to revise a decree of the United States denying the right of J. E. Johnson and others, petitioners, to be paid out of a surplus in the hands of F. O. Norris and others, trustees, interest accruing after adjudication on claims paid in full. Petition allowed, and decree reversed.

On November 6, 1907, in the court below, the firm of Vineyard, Walker & Co., and the individuals composing the firm, to wit, B. L. Vineyard, A. M. Waugh, Peter Hahn, Leo Hahn, and R. E. Walker, were, on their voluntary petition, adjudged bankrupts. F. O. Norris, J. J. Whatley, and L. R. McFarlane were appointed trustees. During the course of administration, dividends were paid to the partnership creditors and to the creditors of the individual partners amounting to 100 cents on the dollar, including interest to the date of the filing of the petition; but no interest which accrued subsequent to November 6, 1907, was paid.

On March 26, 1910, the trustees filed a report showing the following assets on hand:

| | |
|---|---|
| B. L. Vineyard | $60,061 45 |
| R. E. Walker | 7,119 54 |
| Peter Hahn | 16,357 78 |
| Leo Hahn | 4,894 04 |
| Total | $88,432 81 |

The trustees prayed that their report be approved as a final report, and that they be discharged and ordered to return the surplus assets to the bankrupts. J. E. Johnson and other holders of approved claims against the partnership estate, and S. S. Robinson, the holder of an approved claim against the individual estate of R. E. Walker, opposed the application, and prayed that the trustees be required to further administer the estate and to pay such interest as had accrued on all approved claims from and after November 6, 1907, the date of the filing of the petition. The referee denied the creditors' petition for interest, granted the trustees' application, and ordered the surplus assets turned over to the bankrupts. The creditors mentioned, whose claims aggregated over $70,000, filed their petition for review. On May 30, 1910, the matter came up for hearing before the district judge, who rendered a decree affirming the order of the referee and refusing the creditors' prayer for interest, and ordering the trustees to return to the bankrupts the surplus, $88,432.81. In their petition for review, the creditors assign this decree as error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Walter F. Brown (Carothers & Brown, on the brief), for petitioners.
T. M. Kennerly and J. F. Wolters (C. A. Warnken, Richard G.
Maury, and Lane, Wolters & Storey, on the brief), for respondents.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). This
controversy involves the disposition of $88,432.81, a surplus left in the
hands of the trustees of the bankrupts after paying the principal of all
claims proved and allowed, and the interest thereon up to the date of
the filing of the petition in bankruptcy. The contention of the credi-
tors is that interest on their claims accruing subsequent to the filing
of the petition should be computed and paid out of the surplus, and
that the bankrupts are entitled to have returned to them only the sur-
plus left after paying such interest. The contention of the respond-
ents is that the creditors are entitled to collect only the principal of
their claims and interest to the date of the filing of the voluntary pe-
tition, and that therefore the entire surplus should be returned to the
bankrupts. The referee sustained the contention of the respondents,
and the District Court affirmed the referee's decision and directed by
decree that the trustees pay the entire surplus to the bankrupts.

The creditors seek to review and reverse that decree.

The record presents this question for decision: Where there is a
surplus of a voluntary bankrupt's estate after the payment of all
proved claims with interest thereon to the date of the filing of the pe-
tition, should all of such surplus be returned to the bankrupt, or should
it be first applied to the payment of the interest which has accrued on
the claims subsequent to the filing of the petition and the remainder
only be returned to the bankrupt?

Section 63 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat.
562 [U. S. Comp. St. 1901, p. 3447]) designates the debts which may
be proved and allowed against the bankrupt's estate, and the first class
of debts named is described as follows:

"A fixed liability, as evidenced by a judgment or an instrument in writ-
ing, absolutely owing at the time of the filing of the petition against him,
whether then payable or not, with any interest thereon which would have
been recoverable at that date or with a rebate of interest upon such as were
not then payable and did not bear interest."

And section 65e provides that:

"A claimant shall not be entitled to collect from a bankrupt estate any
greater amount than shall accrue pursuant to the provisions of this act."

Relying on these provisions, the respondents contend that only such
claims as are a fixed liability at the date of the filing of the petition
can be proved, and that no interest can be proved or paid except that
which has accrued when the petition is filed.

[1, 2] Ordinarily, no question as to subsequently accruing interest
can arise, for it is a very rare occurrence that a surplus is left after
paying the principal and interest to the date of the filing of the petition.
When the fund is insufficient to pay the whole amount of the debts, it
is immaterial between creditors holding claims bearing interest at a
uniform rate as to what time interest should be computed. The bank-

rupt would have no interest in the question, and it is unimportant to such creditors whether the dividend is at a higher or lower rate per cent., as the amount received by them would be the same. That the interest on all interest-bearing claims should be computed to the same time is necessary to secure an equitable distribution, and both state insolvency statutes and bankruptcy acts usually fix a time, or the courts, in practice, adopt a time. The purpose is to secure uniformity and an equitable distribution. The provision is made in both state insolvency statutes and in bankruptcy laws as a rule for the settlement of an insolvent or bankrupt estate. It was not intended to be applied to a solvent estate. It was not in the contemplation of Congress that a solvent estate would be settled in the bankruptcy courts. In involuntary cases, the adjudication is only had when an act of bankruptcy has been committed and when the estate of the alleged bankrupt is insolvent; that is, "whenever the aggregate of his property * * * shall not, at a fair valuation, be sufficient in amount to pay his debts." Bankruptcy Act, § 1. The voluntary bankrupt is required to allege in his petition "that he owes debts which he is unable to pay in full." General Order 38, Form 1 (89 Fed. xv, 32 C. C. A. xxxix). With the exception of property exempt under state laws from liability for debts, the bankruptcy act provides for the distribution of the bankrupt's entire estate among his creditors. The only reference in the act to returning any of the estate to the bankrupt relates to unclaimed dividends. Dividends that remain unclaimed for six months after the final dividend has been declared are to be paid by the trustee into court; and dividends unclaimed for one year are, under the direction of the court, to be distributed to the creditors whose claims have been allowed, but not paid in full, and, after such claims "have been paid in full, the balance shall be paid to the bankrupt." Bankruptcy Act, § 66.

This section relates to unclaimed dividends only. It shows that the Legislature intended (exempt property and costs, and debts having priority, being excepted) that the entire estate should be divided pro rata among the creditors by the declaration of dividends. When a dividend is unclaimed, it provides for its disposition—it is to go to the satisfaction of other claims till they are paid in full. It is only after the claims are paid in full that "the balance shall be paid to the bankrupt." The balance meant is not a surplus, but the remainder of unclaimed dividends—the remainder of sums allotted to creditors who have failed to claim them; the remainder, after satisfying in full the claims of other creditors who have not failed to claim their dividends. This section gives no authority to pay a surplus to the bankrupt which has never been embraced in a declaration of dividends, and it shows that the act neither contemplates the existence nor provides for the disposition of any surplus which shall not be embraced in the declaration of dividends.

[3] But, unquestionably, a surplus after paying in full all debts, including all interest due on the debts accruing before and subsequent to the filing of the petition, would equitably belong to the bankrupt, and no statute would be needed to authorize the court to direct its payment to the bankrupt.

[4] The act provides that any person, except certain corporations, shall be entitled to the benefits of the act as a voluntary bankrupt. Section 4a. The adjudication on a voluntary petition is ex parte, and the creditors are not heard to contest it. In re Carleton (D. C.) 115 Fed. 246; In re Jehu (D. C.) 94 Fed. 638. Can it be that the act means that a voluntary petitioner may, although solvent in fact, stop the interest on his debts, while collecting by the trustee the interest on his assets; and that he may accomplish this in an ex parte proceeding which his creditors are not heard to resist? In such case, if the contention of the respondents is to prevail, the proceeding may be greatly to the profit of the bankrupts after paying the referee and trustees the fees allowed by law. The extraordinary result would be that a delay in payment arising from a proceeding begun by the debtors, and which the creditors were powerless to resist, would prevent the creditors from collecting interest out of an estate able to pay it, when the general rule is that interest is always given for delay in payment. The bankrupt's estate often, as in this case, may consist, in the main, of interest-bearing assets. The act provides that the trustee shall account for and pay over to the estate all interest received by him upon the property of the estate. Section 47 (1). Where the settlement is delayed, this interest may amount to a large sum. A construction of the act that would give it to the bankrupt, and leave unpaid interest on debts due from the bankrupt, would seem strangely inequitable.

It is true, as a general rule, that, where property of an insolvent passes into the hands of the court, subsequently accruing interest is not allowed against the fund. Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663. This principle is applied as between creditors claiming the fund. It is properly applicable doubtless, in some cases, in favor of a debtor who has been enjoined or prevented from paying a debt by litigation begun by a creditor. But in this case there is no dispute between creditors. The contest is between the creditors and the debtors, and the litigation was begun by the debtors, and no proceeding was had at the instance of others to delay payment.

If it be conceded that there is no express provision of the statute allowing interest that accrues after the filing of the petition to be paid out of a surplus, the statute is certainly silent, also, as to paying such surplus to the bankrupt and leaving such interest unpaid. Under the general rule of law, the debtor is required to pay interest up to the time he pays his debt. If the bankruptcy act does not control, the general law does.

As said by Jenkins, Circuit Judge, in Re Kane, 127 Fed. 552, 553, 62 C. C. A. 616:

"A court of bankruptcy is a court of equity, seeking to administer the law according to its spirit, and not merely by its letter."

When the bankrupts, or the trustees acting for them, move the court to direct the fund to be paid to them, they should be required to do equity by paying the interest due by law up to date. Even in cases where there is a statute making usury forfeit all interest, a complain-

ant seeking relief in equity from usury is required to pay legal interest.

·The bankruptcy act of March 2, 1867, c. 176, 14 Stat. 517, provided that all debts due and payable at the time of the adjudication of bankruptcy may be proved against the estate, providing for a rebate of interest as to debts existing but not payable until a future day. Under that statute, to secure equitable uniformity in the distribution, interest was computed to 'the same time on each claim. When a question arose between the bankrupt and a creditor as to the payment of subsequently accruing interest out of a surplus, the question stood on principle just as it stands under the present bankruptcy act. The act in neither case makes express provision for such contingency. In Re Hagan, 6 Ben. 407, 11 Fed. Cas. No. 5,898, Blatchford, District Judge, approved a decision of the register, holding that the creditors, out of a surplus left in the estate after paying the claims, with interest up to the date of the filing of the petition, were entitled to collect the subsequently accruing interest. Bond, Circuit Judge, in Re Bank of North Carolina, 12 N. B. R. 130, 2 Fed. Cas. No. 895, likewise held that the creditors were entitled to receive the subsequently accruing interest out of a surplus fund. In re Town, 8 N. B. R. 40, Fed. Cas. No. 14,112, decided by Longyear, District Judge, is to the same effect.

The same question has arisen under the insolvency laws of several of the states.

In Clemons v. Clemons, 69 Vt. 545, 548, 38 Atl. 314, 315, a case involving the construction of an insolvency statute, the court said:

"It is true the statute provides that, upon debts subject to the payment of interest, interest shall be computed to the date of filing the petition. It is a matter of convenience that a time should be fixed for that purpose, and the time chosen is as convenient as any; but the statute does not mean that interest shall in no event be computed to a latter date, for obviously it should be when, for instance, the assets are more than enough to pay the face of the debts as allowed."

The insolvency statutes of other states have been construed in the same way. Brown v. Lamb, 6 Metc.' (Mass.) 203, 210, 211; Williams v. American Bank, 4 Metc. (Mass.) 317; Prichett v. Newbold, 1 N. J. Eq. 571. Chancellor Walworth, construing the New York statute, in the Matter of Murray, 6 Paige (N. Y.) 204, 205, said:

"In settling the tableau of distribution, therefore, the interest upon those debts which bear interest or upon which it is recoverable as damages, upon settled legal principles, should be computed to that time (the date of assignment) ; and, if any debts are not then due, and which are not upon interest, a proper discount should be made. As to subsequent interest, if the debts are not paid at that time, and the fund which is afterwards realized by the assignee is more than sufficient to pay the amount thus found due at the time of the assignment, the interest on all the debts subsequent to the assignment should be paid ratably out of the surplus."

In Sexton v. Dreyfus, 219 U. S. 339, 344, 31 Sup. Ct. 256, 257 (55 L. Ed. 244), Mr. Justice Holmes said:

"We take our bankruptcy system from England, and we naturally assume that the fundamental principles upon which it was administered were adopted by us ,when we copied the system, somewhat as the established construction of a law goes with the words where they are copied by another state."

In 1743, long before the passage of our first bankruptcy act, Lord Chancellor Hardwicke, in Bromley v. Goodere, 1 Atkyns, 75, considered and decided, under the English statutes, the exact question involved here. It was a contest between the creditors and the heirs of the bankrupt over a surplus. The debts had been paid in full, principal and interest; the interest being computed, as the English statute required, up to the date of the commission. The creditors claimed the subsequently accruing interest out of the surplus, and the bankrupt's heirs claimed the entire surplus, pleading the bankrupt's discharge. The Lord Chancellor held that the creditors were entitled to have the subsequently accruing interest paid out of the surplus. This rule was approved in later English cases. Ex parte Mills, 2 Vesey, Jr., 295; Ex parte Clarke, 4 Vesey, Jr., 676.

Blackstone states the usual English rule to be that all interest on debts shall cease from the time of issuing the commission, yet, in case of a surplus left after payment of every debt, such interest shall again revive. 2 Blackstone's Commentaries, 488.

The facts are not very clearly and fully stated in Re John Osborn's Sons & Co., 177 Fed. 184, 100 C. C. A. 392, 29 L. R. A. (N. S.) 887; but the statement is sufficient to show that certain claims based on accounts had been proved against the bankrupt's estate and paid in full by dividends, and that the controversy was as to whether a surplus should be paid to the bankrupts or be used in paying interest on the claims, including interest which accrued subsequent to the allowance of the claims. The court, deciding that the proof and allowance of the claims were, in effect, judgments, held that they were entitled to be treated as judgments, and, as such, interest accruing both before and after their allowances should be paid on the claims. And National Bank of Commonwealth v. Mechanics' National Bank, 94 U. S. 437, 24 L. Ed. 176, is cited as sustaining this view by analogy. The Osborn Case is the only one to which our attention has been called, involving the distribution of a surplus, that has arisen under the present bankruptcy act.

It is said that the subsequently accruing interest should not be paid because it has never been proved as a debt. We do not think this objection is sound. The proof of an interest-bearing claim is proof of the interest collectible on such claim. Interest is an incident of, or a part of, the debt, and no separate proof of it is required.

The fact that the surplus to be distributed arises from the individual estates of the partners does not affect the question; for it is expressly provided by section 5f of the act that:

"Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts."

[5] It is argued that the respondents, having been discharged in bankruptcy, are protected by the discharge from the payment of the interest claimed. The discharge ordinarily operates to relieve the bankrupt of further liability; but it does not relieve the fund in the hands of the trustees, nor affect in any way the claim that creditors may have to the fund. It is a trust fund held by the trustees for ad-

190 F.—30

ministration under the direction of the court, wholly unaffected by the discharge of the bankrupts. Bromley v. Goodere, 1 Atkyns, 75, 80.

. The statute contains no express provision that answers the question involved in this case. There is in court a fund amounting to $88,432.-81. The court must give directions as to its disposition. Whether we are governed by the apparent intention of Congress as shown by the general purpose of the bankruptcy law, or by the general principles of equity, the result would be the same. The bankrupts should pay their debts in full, principal and interest to the time of payment, whenever the assets of their estates are sufficient. The balance then remaining should be returned to the bankrupts.

The petition for revision is allowed, and the decree of the District Court is reversed, with directions to distribute the fund in conformity with the foregoing opinion of this court.