**BERL et al. v. CRUTCHER et al.**

**DOYLE et al. v. SAME.**

**No. 6596.**

Circuit Court of Appeals, Fifth Circuit.

July 20, 1932.

Rehearing Denied Aug. 30, 1932.

DAWKINS, District Judge, dissenting in part.

George Thompson, Jr., and Ogden Shannon, both of Fort Worth, Tex., W. F. Bane, of Dallas, Tex., and Hugh M. Morris, of Wilmington, Del., for appellants.

K. C. Barkley, of Houston, Tex., and George W. Rice, B. K. Gorce, William E. Allen, S. C. Rowe, and Gaines B. Turner, all of Fort Worth, Tex., for appellees.

Before FOSTER and HUTCHESON, Circuit Judges, and DAWKINS, District Judge.

## FOSTER, Circuit Judge.

This is an appeal from an interlocutory decree refusing to vacate the appointment of a receiver and a special master, under the provisions of section 129, Jud. Code (28 USCA § 227). The record is made cumbersome by the inclusion therein of much irrelevant matter. Disregarding this, the material facts, stated as briefly as possible, are as follows:

On January 29, 1923, the Virginia Oil & Refining Company, a Delaware corporation, was adjudicated bankrupt in the Northern District of Texas at Fort Worth. It owned property and did business at Fort Worth, and had an office in that city, where all its meetings of stockholders and directors were held, and all of its books and records were kept, as permitted by the provisions of its charter and the laws of Delaware. It neither did business nor owned property in Delaware. A trustee was appointed and proceeded to administer the property, paying some dividends to creditors who had proven their claims. The trustee filed a final return on October 19, 1926, and was discharged. However, the bankruptcy proceedings were not formally closed, and the bankrupt was not discharged.

Part of the assets surrendered consisted of oil and gas leases to several thousand acres of land in Gregg county in the Eastern District of Texas. This property was thought to be of so little value that the trustee did not attempt to administer it and did not take the trouble to formally abandon it. About four years after the trustee was discharged, oil was discovered in the vicinity of this property and it became very valuable, perhaps worth between one and two million dollars. As soon as this became known, many persons began reaching out for control of these valuable assets.

In November, 1930, Gaines B. Turner, its last president, procured the appointment of a receiver for the corporation by a state court of Texas. This receiver took possession of the property and proceeded to administer it. It is unnecessary to review this proceeding except to say that Turner alleged he owned 1,000,000 shares of the stock of the bankrupt and brought the suit against his two sisters, also alleged to be stockholders. He appeared merely as a stockholder and not as president. The corporation was not made a party, and no one at all was served with process.

In February, 1931, a few months after the Turner suit was filed, the bankruptcy proceedings were revived, and the present trustee, B. K. Isaacs, was appointed. Persons who had not theretofore done so filed claims as creditors to the amount of over $100,000. Isaacs applied to the state court, and, contradictorily with the receiver, obtained an order from that court returning to him all the property. Later, the state court receiver applied to the bankruptcy court for the return of the property. This was denied, and no appeal was taken. Isaacs has continued to administer the property in bankruptcy. Much of it is in litigation. It is unnecessary to review this administration in detail. It is highly probable that there will be enough realized to leave a substantial surplus after paying the expenses of administration and all creditors asserting claims in full.

Turner continued his activities. The charter of the bankrupt had been repealed by proclamation of the governor of Delaware in January, 1925, two years after bankruptcy, for nonpayment of franchise taxes. The license to do business in Texas also had been canceled. In June, 1931, Turner, pretending to act by virtue of a resolution adopted by some of the last directors, had the charter renewed in Delaware and the right to do business in Texas revived, for which latter purpose he had the name changed to Virginia Production Company. Since bankruptcy there have been no meetings of stockholders, and, except as just stated, the officers and directors have not attempted to act at all.

In September, 1931, Mr. and Mrs. Crutcher, alleging themselves to be the owners of 32,240 shares of stock in the bankrupt, brought a suit against the bankrupt and other persons claiming to be stockholders, some of which claims they denied, on behalf of themselves and all other stockholders, in the federal court for the Northern District of Texas, wherein the bankruptcy proceedings were pending. The bill showed diversity of citizenship and a sufficient amount involved, and, by appropriate allegations, set up the facts above outlined, and prayed for the appointment of a receiver and a master in chancery. Service of subpœna was made on the corporation through Turner as president. The corporation and other defendants appeared through counsel and joined in the prayer for a receiver and master. On this bill the court appointed a special master to

receive the claims of stockholders, take the evidence as to ownership and report to the court, his conclusions not to be final. The court also appointed a receiver to take over from the trustee any surplus remaining after the conclusion of the administration in bankruptcy, and authorized him to join with the trustee in pending litigation.

In October, 1931, after the filing of the Crutcher bill, Harry B. Staver, alleging himself to be a stockholder of the Lewis Oil Corporation, another dormant Delaware corporation, filed a bill in a state court of Delaware for the appointment of a receiver over that company. The bill alleged that the Lewis Company, together with other assets, owned 1,378,000 shares of stock in the bankrupt. Evidence in the record supports the conclusion that Turner and Staver were acting in harmony. On this bill E. N. Berl and Paul L. Hart were appointed receivers.

In January, 1932, after the appointment of the master and receiver in this case, William P. Brockermann, Jr., filed a bill in the United States District Court for the District of Delaware, against the Virginia Production Company, alleging that he owned 4,640 shares of its stock; that there had been issued and were outstanding approximately 1,900,000 shares of stock; that numerous other persons were asserting claims to stock, one person claiming to own 4,000,000 shares; that these claims cast a cloud upon the title to his stock. The bill prayed for the appointment of a special master to determine the true ownership of the stock in the company. A master was appointed, but, so far as the record discloses, no other proceedings were had.

The total authorized capital stock of the bankrupt was 6,000,000 shares of $1 par value. All of its books and records have been lost or destroyed. In approximately five months persons residing in 35 different states have filed 1,943 interventions with the master, claiming ownership of approximately 7,000,000 shares of stock. This includes the claims of Turner and Brockermann but not that of the Lewis Company, making a total of 8,378,000 shares, to which title is asserted. About half of the claimants have presented stock certificates. Others have filed affidavits of loss of certificates. There are conflicting claims to the same shares. Some are claiming an interest in the bankrupt by virtue of stock ownership in corporations alleged to have been merged with the bankrupt or an interest in property alleged to have been transferred to the bankrupt. The stock claimed by the Lewis Company is also claimed by a number of individuals.

The Virginia Production Company, through Turner as attorney, Isaacs, trustee, C. V. Noble and J. F. Doyle, stockholders, and Berl and Hart, receivers, all intervened in the Crutcher suit and moved for the setting aside of the order appointing the receiver and the master, on various grounds, to be discussed later. This appeal is from the interlocutory judgment overruling these motions, and is only on behalf of Berl and Hart, and Doyle, appearing for himself and representing Isaacs.

As no attempt has been made to take the property out of the hands of the trustee prior to its final administration in bankruptcy, he is without substantial interest, and the appeal on behalf of Isaacs may be dismissed from further consideration.

It is contended on behalf of the other appellants that the District Court for the Northern District of Texas is without jurisdiction, on the following grounds: That the suit is of a local nature because the subject-matter is the stock of the corporation, which stock is located in Delaware; that the suit involves the internal affairs of the corporation; and that only the courts of Delaware have jurisdiction. In the alternative, it is urged that, if the court be held to have jurisdiction, it should not exercise it, but should refer the parties to the courts of Delaware for their remedy. It is further contended that the appointment of the receiver should be set aside for the following reasons: That the corporation is a valid, existing entity, and is entitled to receive the surplus from the trustee; that a receiver has been appointed in pending prior proceedings in a state court of Texas; and that the court has no property of the corporation within its territorial jurisdiction.

These contentions overlook the fundamental principles governing the case. Conceding that the stock has a situs in Delaware and the courts of Delaware, state or federal, would have jurisdiction to entertain a suit to determine the status of the stock and to bring in the necessary parties for that purpose, such jurisdiction is not exclusive. A court of a state wherein a foreign corporation owns property and does business, having jurisdiction over the corporation and the stockholders, also has jurisdiction to determine questions arising as to the ownership of the stock, which in a proper case it will exercise. Burnrite Coal Briquette Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002; American

Creosote Works v. Powell (C. C. A.) 298 F. 417; Fudickar v. Louisiana Loan & Inv. Co. (D. C.) 13 F.(2d) 920; Williamson v. Missouri-Kansas Pipe Line Co. (C. C. A.) 56 F.(2d) 503. In this case it could not be questioned that the balance of convenience is with the federal court in Texas, as it is apparent that a great majority, if not practically all, of those claiming to be stockholders, are already before that court. It would be unfair to remit them to the courts of Delaware to begin their litigation anew.

The District Courts of the United States now have complete equity jurisdiction. Prior to the abolition of the circuit courts and the vesting of their jurisdiction in the District Courts by the adoption of the Judicial Code, as of January 1, 1912, the District Courts were given the widest equity powers in proceedings in bankruptcy by section 2 of the Bankruptcy Act of 1898 (11 USCA § 11 (15), especially clause 15, which gives them authority to "make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title."

■ The federal court for the Northern District of Texas has exclusive jurisdiction over the property of the bankrupt wherever situated, and ancillary jurisdiction to determine any controversy between third parties as to the title and ownership of that property, with authority to bring in all parties necessary for the complete determination of the controversy. Whitney v. Wenman, 198 U. S. 539, 25 S. Ct. 778, 49 L. Ed. 1157; In re Wood & Henderson, 210 U. S. 246, 28 S. Ct. 621, 52 L. Ed. 1046; Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327; Lazarus, Michel & Lazarus v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305.

■ Except by necessary implication, the Bankruptcy Act makes no provision for the disposal of a surplus of the property surrendered remaining after payment of the costs of administration and all creditors in full, but in the exercise of its equity jurisdiction it is the duty of the court to return it to the bankrupt. Johnson v. Norris (C. C. A.) 190 F. 459, L. R. A. 1915B, 884. As this is a part of the administration of the bankrupt's estate, the returning of the surplus is a proceeding in bankruptcy.

■ Generally speaking, a corporation is a separate entity distinct from the stockholders, but as between itself and its stockholders this is a mere fiction, and the equitable ownership of all its property is in the stockholders, subject to the prior rights of creditors. 7 R. C. L. 27, § 4, "Corporations."

■ It is the general rule in the United States that, where the charter or by-laws of a corporation provide for the annual election of officers and directors, and no election is held, the former officers hold over until their successors are elected. But this applies to a going concern, where there is no break in the exercise of the duties of the officers and directors. In this case the by-laws provide for annual elections of officers and directors by the stockholders. Since the date of bankruptcy, January, 1923, there have been no meetings of stockholders and no elections. The corporation was insolvent, and with the adjudication in bankruptcy all of its property passed out of its control, and the officers and directors ceased to function. Its charter was repealed two years after bankruptcy. When that occurred, the corporation might be considered dissolved by operation of law. Rochester R. Co. v. Rochester, 205 U. S. 236, 27 S. Ct. 469, 51 L. Ed. 784. We are not required to determine whether the act of Turner in having the charter revived again vested the corporation with legal existence, but it would be ridiculous to say that the former officers and directors have any authority at this time to represent the corporation or its stockholders in any disposition of its property. Any authority they may be given hereafter must come from the stockholders.

■ In the performance of its duty to turn the surplus over to the bankrupt, it was necessary for the District Court to determine who are the stockholders. The propriety of appointing a receiver to hold that surplus in the interim is apparent. In the exercise of their equity jurisdiction, courts of bankruptcy may appoint special masters to facilitate the trial of issues before them. In re Lacov (C. C. A.) 134 F. 237. There could be no doubt that the appointment of a master was necessary in this case, as neither the trustee nor the referee would be vested with jurisdiction to determine the ownership of the stock by virtue of their respective offices. Whether the corporation is to be continued or the surplus distributed to the stockholders is a matter to be decided in the future. With that we have no concern on this appeal.

■ The contention that prior receivership proceedings are pending in a state court of Texas of competent jurisdiction is easily disposed of. On the face of the papers, the

proceeding in which the receiver was appointed was collusive. The corporation was an indispensable party to that proceeding, and was not brought in. High on Receivers, § 290; Irvin v. Anthony Shoals Power Co. (C. C. A.) 277 F. 926. It is plain that this was recognized by the state court in entering the order returning the property to the trustee in bankruptcy. This proceeding may be considered a nullity, to be disregarded by the federal court. McDonald v. Mabee, 243 U. S. 90, 37 S. Ct. 343, 61 L. Ed. 608, L. R. A. 1917F, 458.

It is apparent that the door is wide open for the entrance of fraud, and the strong arm of a court of equity is required to preserve the property for its true owners and to do justice to all parties in interest. It was more convenient to set up an agency to determine the ownership of the stock while the bankruptcy proceedings were still pending rather than to wait for their termination. Therefore the appointment of the master was not premature. As the receiver was not authorized to interfere with the custody of the property in the hands of the trustee, no complaint could be made as to his appointment at the time the order was entered. If the powers given him are too broad, that is a question not involved in this appeal. We express no opinion on this point. All that is presented is the propriety of appointing a receiver to stand by representing the corporation to take and hold the surplus, if there is one, for the benefit of the parties in interest as may be ultimately decided by the court. Any other question touching his administration remains open for future consideration.

Equity regards substance rather than form. Regardless of every other consideration, the Crutcher suit may be considered ancillary to the bankruptcy proceedings and the court had ample jurisdiction to make the orders complained of. No abuse of discretion is shown in doing so.

The judgment appealed from will be affirmed, the costs of appeal to be paid equally by the appellants, and not to be taxed against the fund.

Affirmed.

DAWKINS, District Judge (dissenting in part).

In 1919 Virginia Oil Company, Inc., was organized under the laws of Delaware, with an authorized capital of six million shares, of the par value of $1 each. The name was later changed to the Virginia Oil & Refining Company, and in December, 1922, it was adjudged a bankrupt in the Northern District of Texas. All of its business, property, and operations were in Texas. Among its assets were several thousand acres of mineral leases, principally in Gregg county, Eastern District of Texas, which were reported worthless by the trustee prior to his discharge in 1926. The bankrupt was never discharged. Late in 1930, or early in 1931, oil was discovered in the vicinity of these properties, and they became quite valuable. The principal moving spirit in the organization, promotion, and operation of the corporation, was one Gaines B. Turner of Fort Worth, Tex. After the discovery of oil, he had a receiver appointed in the state court of Texas, in a proceeding wherein his two sisters alone were made defendants, but who were never served with process. The receivership continued for some months, and some of the properties were sold or leased. Subsequently the bankruptcy proceedings were reopened and a new trustee selected, to whom the property was surrendered by the state receiver. The state receiver later intervened in this case and sought return of the property, which was denied, but no appeal has been prosecuted, and that question has become final.

In the meantime, the authority of the corporation to do business in both Delaware and Texas had been revoked for nonpayment of franchise taxes. In 1931 these rights were restored, and the name was again changed, this time to the Virginia Production Company. These things were done at the instance of Turner, who purported to act as president of the company.

September 12, 1931, the present suit was filed by Mrs. M. J. Crutcher and her husband, citizens of Texas, against the corporation and certain other individual defendants, as stockholders, alleged to be citizens of Tennessee, Oklahoma, and California. Plaintiffs claimed to own 30,000 and 2,240 shares, respectively, in the company, and alleged that they were suing on behalf of themselves and all other persons or stockholders in the same class who might wish to join therein. The basis of jurisdiction was diversity of citizenship. The petition alleged that the records, books, and papers of the corporation had been lost or destroyed and it was impossible to tell how much stock had been issued or who were the owners thereof; that there was no one to act for and on behalf of the company, and it was necessary that a receiver be appointed to take charge of and hold the surplus of funds and property which would remain after the full payment of creditors and costs of administra-

tion in the bankruptcy proceedings; and, further, that a master should be appointed and appropriate proceedings had for the determination of the names of the persons holding and the amount of outstanding legal stock.

On October —, 1931, there was filed on behalf of the defendant corporation an appearance (by what authority does not appear), together with the other individual defendants named in the bill, "each and all (of whom) waive the issuance of service of process and citation herein and hereby make and file their appearance in said case as defendants and in the capacities in which they are respectively sued." The facts alleged in the petition were neither admitted nor denied, but they "say there is confusion and great uncertainty as to the exact amount of outstanding stock in the Virginia Oil & Refining Corporation, or as to the validity of the ownership thereof," and that it was to the interest of all concerned to have the same determined, and they joined in the prayer for appointment of a receiver and master. Service for the corporation was made upon Gaines B. Turner, "as President of the Virginia Oil & Refining Corporation." December 14th the defendant corporation filed a supplemental answer, admitting the necessity for the appointment of a receiver, and joined in the prayer of the plaintiffs therefor. On the day following, December 15th, the court below appointed a receiver, with authority to take charge of the property of the corporation, subject to the administration in bankruptcy for the benefit of creditors. He was given the usual powers. Again there was nothing to show who acted for the company in this last appearance except that the pleading was signed by counsel. On January 4th there was filed what was styled an intervention, asking that the appointment of the receiver be vacated. This was signed by the said Turner, representing himself as attorney for the company. On the same day, January 4th, the trustee in bankruptcy moved to dismiss the bill herein on the ground that the bankrupt court was vested with full power and authority to deal with the estate and to determine who was entitled to receive the surplus, after payment of debts. These motions and exceptions of the trustee and the corporation were put at issue and duly overruled on January 16, 1932. February 10, 1932, leave was granted to Berl and Hart, as receivers of the Lewis Oil Corporation, to file a special appearance, which was done, and they alleged that the oil company which they represented was the owner of approximately a million shares of stock in the Virginia Oil & Refining Corporation, and that the court below was without jurisdiction to appoint a receiver and master, for the reason that this right was vested exclusively in the courts of Delaware, which alone could determine effectively who were stockholders of said company; and, further, that one William P. Brockman, alleging ownership of 6,440 shares in said Virginia Oil & Refining Company, had, since the filing of the present bill, instituted a similar proceeding in the District Court of the United States for Delaware. February 13th, the former order, appointing a receiver and master, was set aside and additional evidence taken.

Again, on March 9, 1932, there was filed on behalf of the Virginia Production Company a pleading, asking the court to continue the receivership and that all objections thereto be overruled. This was signed by counsel other than Turner. It alleged that the Virginia Company was originally a "non-incorporated joint stock association," and that all of the leases in Gregg County had been taken in the name of Gaines B. Turner, as trustee, for the association, and, when the corporation was later formed under the laws of Delaware, most of the stock of the joint association was "converted into stock of the corporation," but that there are still outstanding and in the hands of the holders and owners thereof certain certificates of beneficial interest, and that the holders and owners of same are asserting title to a proportionate part of the assets and properties in Gregg county, Tex., and that it will have to be determined the extent to which they shall participate therein. This petition further alleged as follows:

"2. That in addition to the said Virginia Company, an unincorporated joint stock association, and the said Virginia Company, Inc., a corporation, Gaines B. Turner and others organized and incorporated the Virginia Drilling Company, a corporation, the Virginia Refining Company, a corporation, and also the Breckenridge Royalty Syndicate, a Trust Estate, the Six Virginia Syndicates, a Trust Estate, and the Lee Well No. 1 Syndicate and Lee Well No. 2 Syndicate, and of which trust estates one James W. Swayne of Ft. Worth, Texas, (now deceased) was the Trustee.

"That said corporations, and the said syndicates, issued stock to many persons who now claim the right to participate in the assets and properties of the Virginia Oil & Re-

fining Company, now the Virginia Production Company, and the properties claimed by it in Gregg County, Texas, by reason of certain interrelations and contracts between said corporation and the syndicates and certain mergers, and that in addition to the stock ownership in said Virginia Oil & Refining Company (now Virginia Production Company) it will be necessary for the Master in Chancery to determine the validity of the claims of such persons and whether or not they are entitled to stock in the Virginia Production Company, a corporation, and whether or not they are entitled to a proportionate part of the assets and properties in Gregg County, Texas, or elsewhere, belonging to said corporation."

It further alleged that the state court receiver had sold some of the properties and the titles had become involved to such extent as to require the institution of suits for their recovery.

March 10, 1932, defendant corporation filed an amended motion of intervention to set aside the appointment of the receiver and master, alleging that "there was no service or other process served upon this intervener in this suit"; that it knew nothing of the appointment of the receiver until after it had been done, and, by reason thereof, the court was without jurisdiction "to determine the issues of fact as alleged in the bill," and all corporations created by the laws of Delaware were under the exclusive jurisdiction of courts of that state in matters of this kind, except as to taxes. This pleading was likewise signed by Gaines B. Turner, as "attorney for intervenor, Virginia Production Company." Thereafter, on March 16, 1932, C. V. Noble, alleging himself to be a citizen of Iowa and J. F. Doyle, of Dallas, Tex., filed an intervention, claiming to be the owners of 740,000 shares of stock, and asserting that the property and assets of the corporation were under the exclusive jurisdiction and control of the bankrupt court, which had full power and authority to settle all matters involved. They prayed for the discharge of the receiver and master and dismissal of the bill. All pleas to the jurisdiction and motions to dismiss were overruled by the lower court, and the receivership and appointment of the master continued in effect. Some 1,900 claimants of stock have filed their claims before the master, involving fifteen million shares, whereas the authorized capital of the company was limited to six million shares.

The only appeals taken were by the receiver of the Lewis Oil Corporation, and

Doyle on behalf of himself and for the use and benefit of the trustee in bankruptcy.

Without going into details, it is sufficient to say that the appellant receivers make eleven assignments of error: (1) That plaintiffs had not shown any effort to have the officers of the corporation bring this suit; (2), (3), and (4) that no equitable grounds were shown for the appointment of a receiver and master; (5) that the court below had no jurisdiction; (6) (7), and (8), that it had no power to pass upon the issues of whether a corporation still existed, or who were stockholders, and the amounts and validity thereof, for the reason that this jurisdiction was vested exclusively in the courts of Delaware, and (9) that the record disclosed a proper proceeding for that purpose has been instituted in the District Court of the United States for Delaware; (10) that, even if the court below was vested with jurisdiction, it should not have been exercised, for the reason that it was incapable of rendering an effective judgment binding upon all parties in all jurisdictions; and (11) that the plaintiff and all other stockholders, by the acceptance of stock in said corporation, had subscribed to and become bound by the laws of Delaware and were estopped to appeal to any other jurisdiction.

Doyle, individually and for the trustee, claims (1) that the action was premature, in that there was no sufficient showing that there would be a surplus after conclusion of bankruptcy; (2) that the action of the court below was contrary to the provisions of the Bankruptcy Act, giving exclusive jurisdiction to the bankruptcy court over the assets of the estate; (3) that this proceeding will cause unnecessary expense; and (4) that said bankruptcy court is vested with full power, jurisdiction, and authority to determine all matters and things herein complained of.

This long recital is made for the purpose of showing the utter confusion in the pleadings and contentions of the parties and which is likewise disclosed by the evidence.

I think no one will deny that the property and assets of the bankrupt corporation are now properly in the hands of the bankrupt court, whose jurisdiction is exclusive, and that it should remain there until the creditors are paid and the costs of administration settled.

The controversy with the state court receiver has been foreclosed by his failure to appeal from the judgment below, and, besides, I think the action of the state court was wholly void for failure to make the cor-

poration a party to the receivership proceedings therein.

When the bankruptcy proceedings are closed, if there remains a surplus of funds and property, then it rightfully belongs to and should be returned to the bankrupt. In re Lenox (D. C.) 2 F.(2d) 92; In re Hopkins (D. C.) 15 F.(2d) 206. If this had been a Texas corporation, as to whose existence and proper representation no question existed, all that would be necessary would be for it or the trustee to apply to the bankruptcy court for an order to turn the surplus over to the former. Johnson v. Norris (5 C. C. A.) 190 F. 459, L. R. A. 1915B, 884. The entire trouble here grows out of the confused status, both of the bankrupt corporation and those claiming an interest in it, a matter with which the bankruptcy court, primarily, has no concern. The conditions revealed would undoubtedly have justified the court below in appointing a receiver and master, as was done, for a Texas corporation, if the requisite diversity of citizenship existed. A court of bankruptcy, in my opinion, is not properly constituted to determine issues of the nature involved here, as would be a tribunal of general equity powers. The bankruptcy statute is wholly void of provision therefor. Johnson v. Norris, supra. The former's functions are to marshal the assets, determine the rights of creditors, settle their claims, and, if a surplus exists, to return it to the bankrupt. These powers are both express and implied. For this reason, the lower court was justified, I think, in view of this record, in appointing a receiver to take charge of this surplus until the status of the corporation and its stockholders could be determined by a proper tribunal. The serious difficulty in the present proceeding arises, as I see it, not from a want of jurisdiction, for that exists, at least as between the plaintiffs and such other stockholders and persons as have legally appeared, but from the inability of the lower court to draw before it in a lawful manner those claimants of stock and interests in the corporation and its property who have not appeared, as well as those who are unknown, and who I think are necessary and indispensable parties to any judgment that may be rendered. It would seem, since it is not known who are stockholders or how much has been issued, that there is a vital question to be determined, adversely, each one against the other, as to the amount of stock each lawfully owns, and this must necessarily be settled contradictorily between them in a court which can compel their appearance. It cannot be done unless they are legally before the court. In so far as the issues as to who are stockholders and the amounts thereof are concerned, the proceeding in the court below was neither an action of a local nature nor one in rem. The fact that its officers and controlling stockholders carried on its business and conducted its affairs in Texas could not bind those other inarticulate shareholders to submit their interests without actual notice and lawful service, to that jurisdiction. On the other hand, inasmuch as the corporation was created under the laws of Delaware, with its domicile in that state, either a state or federal court possessing jurisdiction over it there could bring them before it in the manner provided by the laws of that state and render a judgment binding upon all. Such a proceeding would be at least quasi in rem, in which substituted process could be used, and the judgment rendered would be good against the world. Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647. The same is not true of the court below.

All of the mineral leases are in the Eastern District of Texas, but, since the principal office of the corporation was in Fort Worth, its books and records were kept there where the stock was issued and transferred, and the surplus remaining after the closing of the bankruptcy, in so far as any funds may be concerned, are or will be in the Northern District of Texas, this, together with the acceptance of service and appearances of the defendants below, I think gave the court jurisdiction upon the ground of diverse citizenship sufficient to appoint a receiver, to protect property within its reach, since the record discloses that there is no one properly authorized to act for the corporation. That officer could then institute ancillary proceedings in the Eastern District of Texas for the purpose of taking charge of the leases and properties until the affairs of the corporation are adjusted in Delaware, so as to have it properly represented in applying to the lower court for a surrender of its property. Through the proceedings in Delaware, it could either be re-established as a going concern and live corporation, or its affairs could be liquidated in such manner as to determine the interest to be paid to each stockholder.

I therefore think that the judgment appealed from should be modified by sustaining the receivership, dismissing the master, and relegating the plaintiffs and other alleged stockholders to the courts of Delaware for a determination of their respective rights as stockholders. The receiver could, in order to protect the interests of the eventual benefi-

ciaries, be authorized to either join the trustee or separately take all necessary action and prosecute all suits for the preservation and recovery of the corporation's property, subject, of course, to the prior jurisdiction and right of the bankruptcy court to the extent necessary of satisfying creditors existing at the date of adjudication, and the payment of costs.

I therefore respectfully dissent from that part of the majority conclusion sustaining the appointment of a master and reference to him of issues as to the validity and ownership of stock and the internal affairs of the corporation.

On Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause are of opinion that the petition for rehearing should be granted, it is ordered that the said petition be and the same hereby is, denied.