**In re John F. DODGE, Bankrupt.**

**Bankruptcy No. 78–330–BK–CA–B.**

United States Bankruptcy Court,
S.D. Florida.

June 2, 1989.

See also, Bkrtcy., 104 B.R. 491.

---

Douglass E. Wendel, Palm Beach, Fla., Trustee.

Theodore Jewell, Palm Beach, Fla., for trustee.

Sylvan B. Burdick, Burdick & Daves, West Palm Beach, Fla., for John Dodge.

John A. Finn, Miami, Fla., for Creditors Finn and McCauley.

Jack F. Weins, Hollywood, Fla., for creditor United Wire.

John J. Brickman, Great Neck, N.Y., for Trustees of United Wire.

Gregory J. Perrin, New York City, for Charles Robbins.

Daniel L. Bakst, West Palm Beach, Fla., for various unsecured creditors.

## ORDER REGARDING POSTPETITION INTEREST

THOMAS C. BRITTON, Chief Judge.

The trustee reports that the assets of this estate, $634,000, are more than sufficient to pay all creditors and all administrative expenses in full and has moved (CP 652) for a ruling whether postpetition interest is payable on unsecured claims from the surplus which otherwise will be returned to the bankrupt, and if so, then at what rate. The motion was heard May 16.

For the reasons which follow, I now conclude that postpetition interest is payable upon the $30,000 claim of Finn and McCauley at the rate of 10% per annum, the rate specified in the promissory note upon which that claim is based.

### The Applicable Law

The *present Code*, Title 11, §§ 101 *et seq.*, explicitly provides payment of postpetition interest to *secured* creditors to the extent the value of the collateral exceeds the secured claim, 11 U.S.C. § 506(b), and to *unsecured* creditors as a fifth priority, ahead only of the return of surplus to the debtor, § 726(a)(5). These provisions, however, have no application in this case.

This voluntary bankruptcy was filed March 24, 1978, more than a year before the effective date, October 1, 1979, of the present Code. This motion is, therefore, governed by the provisions of the Bankruptcy Act of 1898, as amended, without regard to the present Code. This is so, because the present Code contains the following savings clause:

"A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in

connection with such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted." Pub.L. No. 95–598 § 403(a).

The Bankruptcy Act was completely silent with respect to the payment of interest upon bankruptcy claims. By judicial gloss, however, it was well-settled, as stated in *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), that in determining how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits, but must administer and enforce the Bankruptcy Act as interpreted by the Supreme Court in accordance with authority granted by Congress to determine how and what claims shall be allowed "under equitable principles;" Postpetition interest, though not generally payable on bankruptcy claims, may be allowed by the bankruptcy court where justified by the "balance of equities":

"It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been *a balance of equities between creditor and creditor or between creditors and the debtor*." *Vanston,* *supra,* 329 U.S. at 165, 67 S.Ct. at 241. (Emphasis added).[1]

In *Vanston* the Court affirmed the denial of postpetition interest on the equitable principle that in that case to do otherwise would be the imposition of interest upon unpaid interest where the debtor's default had been ordered by the court. The Court said:

"Such a result is not consistent with equitable principles. For legal suspension of an obligation to pay is an adequate reason why no added compensation or penalty should be enforced for failure to pay." *Supra,* 329 U.S. at 166–67, 67 S.Ct. at 241–42.

Thirty-five years earlier, the Fifth Circuit[2] had foreshadowed *Vanston* in *Johnson v. Norris,* 190 F. 459 (5th Cir.1911) by applying equitable principles to hold that the court created rule against postpetition interest had no application to a solvent estate and that the "surplus should be applied first to the payment of the interest accruing on the claims subsequent to the filing of the petition, and the remainder only returned to the bankrupt."[3]

It is clear that the holding in *Johnson* limits the payment of postpetition interest to those creditors who have "proved interest-bearing claims in the first instance" and

---

1. See also 3A *Collier on Bankruptcy* (14th Ed.) ¶ 63.16[1]:

"it should be kept in mind that bankruptcy courts have the power to determine how a debtor's assets should be distributed, and *that equitable principles of bankruptcy administration rather than the validity of a claim under state law govern the payment of interest accruing during administration.*" (Emphasis added).

See also *In re Newbury Cafe, Inc.,* 841 F.2d 20, 21–22 (1st Cir.1988) (decided under Code, oversecured taxing authority not entitled to interest on debt which accrued during bankruptcy proceedings), where the Court said:

"Pre–Code law held post-petition interest generally unrecoverable. [citations omitted] The courts recognized three exceptions. Interest might accrue: (1) where it eventuated that the debtor is in fact solvent; (2) where securities, held by the creditor as security for the debt, produced income after the filing of the petition; and (3) where the value of the secured creditor's contracted security was sufficient to satisfy both principal and interest due on the secured claim.... *the existence*

*and scope of the three exceptions was a function of the equitable powers of the bankruptcy court.*" (Emphasis added).

2. The decisions of the Fifth Circuit before October 1, 1981 are controlling in this Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

3. The Court also said:

"Can it be that the act means that a voluntary petitioner may, although solvent in fact, stop the interest on his debts, while collecting by the trustee the interest on his assets; ... The extraordinary result would be that a delay in payment arising from a proceeding begun by the debtors, and which the creditors were powerless to resist [the voluntary chapter VII petition], would prevent the creditors from collecting interest out of an estate able to pay it, when the general rule is that interest is always given for delay in payment. The bankrupt's estate often, as in this case, may consist, in the main, of interest-bearing assets." *Id.* at 463.

the *Johnson* court was obviously influenced by the fact that estate assets were interest-bearing.

### Balancing The Equities

In the instant case, the estate assets are not interest-bearing. The surplus results from the trustee's settlement of the bankrupt's claim against a New York bank, one of three trustees of a very large spendthrift trust established for his benefit during his minority. That claim was settled in 1983 for $775,000 by the trustee, with this court's immediate approval, but was not approved by the New York court until October 18, 1988 and was not received until December 22, 1988. The settlement contained no provision for interest.

The two major (77%) unsecured claims in the instant case, each in the amount of $100,000 (Robbins and United Wire) result from postpetition fixed sum settlement agreements between the two creditors and the trustee. Neither contained any stipulation for interest.

Of the remaining $60,629.81 unsecured claims in the instant case, this record reflects (Adversary Proceeding # 6 in 78–328) that the $30,000 claim of Finn and McCauley is based upon a March 2, 1978 unsecured promissory note bearing 10% interest commencing April 15, 1978. This claim, like the two larger ones and like four others, which total $14,139.06, were joint and several obligations of this bankrupt's estate and the bankruptcy estates of his mother and step-father. Payment (without interest) was advanced by the other two estates on April 5, 1989.

Applying the *Johnson* holding to the facts of the instant case, I conclude that neither of the two largest unsecured creditors is entitled to any postpetition interest. The Finn/McCauley claim is entitled to 10% simple interest to April 5, 1989, the day the principal was advanced by the other two estates. It is entitled to no other postpetition interest.

Only those claims (if any) which are interest-bearing as evidenced by an instrument or judgment are entitled to postpetition interest. The computation of any such interest shall be consistent with the holding in the preceding paragraph.[4]

The foregoing application of *Johnson* is, I believe, entirely consistent with the balancing of equities directed in *Vanston.* It would be inequitable to allow interest to a creditor who has never bargained for nor been promised interest, from an estate, the assets of which are not interest-bearing. There are no equities in the instant case which would require a different result. On the contrary, I find that they support that result. The additional equities persuasive to me in this case follow.

In the instant case, the extraordinary and unforeseen delayed distribution is not chargeable to either the bankrupt or any of the creditors. It resulted from the reluctance of a New York lower court to rule on issues presented by a third party New York co-trustee.

For many years, it has been understood by all parties to this case and by this court that there would be a substantial surplus returnable to the bankrupt and he was justified in relying upon that understanding when he supported the trustee in the ultimately effective effort to overcome the impasse in New York. The bankrupt's cooperation was of significant assistance in that respect. No creditor offered or provided any assistance. If all unsecured creditors are paid postpetition interest, there would be no surplus returnable to the bankrupt.

The entire expense of obtaining the settlement and of resolving the New York impasse will be borne by the bankrupt as an administrative expense deducted from the surplus otherwise returnable to him. No part of any administrative expense in any of the three related bankruptcies will be borne by any of the unsecured creditors.

The bankrupt's claim, which is the asset that has made possible the 100% distribu-

---

**4.** Because this record is incomplete with respect to the remaining unsecured claims ($30,629.81),

I cannot presently be more specific.

tion to all creditors in the instant case, is an asset to which he alone was entitled. It was an asset against which no creditor had any legal or moral claim until the bankrupt voluntarily filed for bankruptcy. It would be inequitable to leave him with little or nothing from the settlement of that claim by distributing most or all of it to the creditors of his mother (the third co-trustee of the spendthrift trust) and his step-father.

The trustee and his attorney are, once again, directed to expedite the closing of this long overdue case.

DONE and ORDERED.