**In re ARROW AIR, INC., Debtor.**

**Bankruptcy No. 86–00340–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

March 8, 1988.

David M. Levine, of Tew, Jorden & Schulte, Miami, Fla., for Committee of Unsecured Creditors.

Timothy J. Norris, Miami, Fla., for Arrow Air, Inc.

Thomas Dickerson, for Neilan Class.

Merry Lindberg, Miami, Fla., for Southeast Bank, N.A.

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER AUTHORIZING AND APPROVING SETTLEMENT OF VALUE VACATIONS LITIGATION AND RELATED CLAIMS AGAINST ARROW

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER was heard by the Court on March 1, 1988 at 10:30 a.m. on the Motion of Arrow Air, Inc. and the Committee of Unsecured Creditors for Approval of Settlement of Value Vacations Litigation and Related Claims Against Arrow. The Court has reviewed the Motion and has considered the evidence presented and the

arguments of counsel advanced at the evidentiary hearing held on March 1, 1988. The Court notes that due and timely notice of the hearing was given in accordance with this Court's Order dated January 26, 1988 and that no objections to the proposed settlement were filed with the Court or voiced at the hearing. The Court hereby renders its findings of fact and conclusions of law in accordance with its Order Authorizing and Approving Settlement of Value Vacations Litigation and Related Claims against Arrow entered herewith.

## FINDINGS OF FACT

### BACKGROUND OF VALUE VACATIONS LITIGATION

A. *Description of the lawsuit*

1. On August 17, 1984, Terence Neilan commenced an action in the Supreme Court of the State of New York against Value Vacations, Inc. ("Value"), a charter tour operator; David Kols ("Kols"), the President and a principal of Value; Arrow; Connecticut National Bank ("CNB"), a depository bank and escrow agent for Value and Arrow; Southeast Bank, N.A. ("Southeast"), a depository bank and escrow agent for Arrow; and Northwestern National Insurance Company ("Northwestern"), the issuer of a surety bond and rider bond to Value. In addition, Norman Segal ("Segal"), Senior Vice President and a principal of Value, was later added as a defendant in the action.

2. Neilan commenced the action individually and on behalf of a class consisting of all persons who contracted with Value and/or its agents for the delivery of charter air transportation and other travel services which were to have been delivered on or about August 10, 1984 and on various subsequent dates up to and including January 1, 1985, and which were not delivered, in whole or in part, and for which no full refunds have been made, including their assignees and subrogees (the "Neilan Class").

3. On September 14, 1984, the Neilan class action was removed to the United States District Court for the Southern District of New York ("District Court"). On March 29, 1985, the District Court entered an order certifying the Neilan Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)(B) and 23(b)(3). By order dated April 18, 1985, the District Court approved the form and content of a Notice of Class Certification and Filing of Claim Form. Thereafter, notice was sent by first class mail to all identifiable Neilan Class members.

4. The amended complaint in the Neilan action alleged, among other things, that the defendants were liable to the Neilan Class for all damages arising from the failure to deliver contracted for air transportation and other travel services during the period of August 10, 1984 through January 1, 1985 and/or for the failure to properly apply consumer monies as required by applicable Federal Charter Regulations. The amended complaint set forth various causes of action including breach of contract, fraud, gross negligence, conversion, breach of fiduciary duty, violation of Federal Charter Regulations and breach of surety agreement. The defendants answered the complaint and amended complaint and some of them asserted cross-claims against each other.

B. *Relationships of the Defendants in the Neilan Action*

5. Value and Arrow entered into a contract or contracts in February of 1984 providing for the payment and delivery of at least 102 flights/rotations between United States and European cities during the period of May 19, 1984 through October 2, 1984. Value went out of business in August, 1984. Value, Arrow and CNB entered into a depository escrow bank agreement dated February 19, 1984 providing for certain mechanisms for the payment by Value to Arrow for the aforesaid charter air transportation. Southeast and Arrow had previously entered into a depository escrow bank agreement dated September 9, 1981 which provided for certain mechanisms by which Southeast would receive monies payable in advance to Arrow by charterers and would disburse the same to

Arrow. Northwestern issued a surety bond and rider bond in the total amount of $210,000.00 to Value to guarantee the faithful performance by Value of its contracts with tour participants.

C. *Prior Settlement With CNB*

6. By order dated February 11, 1987, the District Court approved a settlement among CNB and the Neilan Class. CNB was thereafter dismissed as a defendant in the Neilan Class action. The settlement fund created by the CNB settlement, which presently amounts to approximately $670,-000.00, is being maintained by CNB, as escrow agent for the Neilan Class, in an interest bearing account entitled Neilan Class Action Settlement Fund No. 1, under the supervision of the District Court.

D. *Partial Summary Judgment Against Southeast in the Neilan Action*

7. By order dated February 11, 1987, the District Court entered an order granting the Neilan Class' motion for partial summary judgment against Southeast on the liability issues on the fifth (breach of fiduciary duty) and seventh (violation of Federal charter regulations) causes of action of the amended complaint. Subsequent thereto, Southeast filed a motion seeking rehearing or reargument of that order or seeking permission to appeal pursuant to 28 U.S.C. § 1292(b). That motion is presently pending before the District Court and is being held in abeyance pending the approval of the settlement of the Neilan class action as discussed herein.

BANKRUPTCY PROCEEDINGS OF ARROW AND CLAIMS FILED AGAINST ARROW'S CHAPTER 11 ESTATE BY NEILAN CLASS MEMBERS AND OTHER DEFENDANTS IN THE NEILAN ACTION

8. On February 11, 1986, Arrow filed its Chapter 11 petition with this Court. Accordingly, the further prosecution of the Neilan action was stayed as against Arrow under 11 U.S.C. § 362.

9. On April 2, 1986, counsel for the Neilan Class filed a class proof of claim with this Court which was later amended on November 18, 1986 (the "Neilan Class Proof of Claim"). The Neilan Class proof of claim, denominated Claim No. 988, asserted claims of approximately $4 million and asserted priority pursuant to 11 U.S.C. § 507(a)(6). By order dated May 6, 1987, this Court sustained Arrow's objection to the Neilan Class Proof of Claim and disallowed the claim. *In re Arrow Air, Inc.*, 75 B.R. 372 (Bankr.S.D.Fla.1987).

10. By order dated November 11, 1986, this Court entered an order fixing December 15, 1986 as the last date for creditors, including Neilan Class members, to file proofs of claim against Arrow, and directed that a Notice of such filing deadline be sent to all claimants and potential claimants including members of the Neilan Class. In addition, the District Court by order dated November 12, 1986 directed that Notice of the Requirement to File Proof of Claim Form With the United States Bankruptcy Court, Southern District of Florida in *In re Arrow Air, Inc.* be sent to all members of the Neilan Class. Both of the aforesaid Notices were sent by counsel for Arrow to all locatable members of the Neilan Class. In addition, counsel for Arrow caused to be published a summary notice of the claims filing deadline in several national newspapers as approved by this Court.

11. As a result of the foregoing, some Neilan Class members filed proofs of claim against Arrow on or before December 15, 1986, while others filed after that date. On or before December 15, 1986, the following claims were filed by Neilan Class members and Arrow's co-defendants in the Neilan action:

a. Members of the Neilan Class filed approximately 904 claims ($1,110,906.17) seeking priority and filed approximately 922 general unsecured claims ($923,978.72).

b. CNB filed a general unsecured claim in the amount of $1,689,877.00.

c. Value and Kols filed priority and general unsecured claims in the amount of $6,857,426.60.

d. Southeast filed a contingent general unsecured claim in the amount of $4 million.

After December 15, 1986, members of the Neilan Class filed approximately 231 claims ($238,021.13) seeking priority and filed approximately 122 general unsecured claims ($92,909.97).

## CURRENT STATUS OF ARROW CHAPTER 11 CASE

12. Arrow's amended Chapter 11 plan of reorganization, as modified, was confirmed by order of this Court dated April 29, 1987. Notice of the entry of the confirmation order was sent to all claimants including members of the Neilan Class who had filed claims. Since that date, both the Debtor and Committee have been monitoring collections of assets to fund the plan and have interposed numerous objections to claims filed against the Arrow estate.

13. It is anticipated that general unsecured creditors whose claims have been allowed will receive a dividend from the Arrow estate equal to approximately 25% of the amount of their allowed claims. However, in the event that the eventual dividend to unsecured creditors is less than 25%, this Court on motion of the Committee or other party in interest is empowered to vacate the confirmation order in which event the Debtor shall be revested with all property of the estate and shall continue as a debtor-in-possession.

## THE PROPOSED SETTLEMENT

14. In an effort to finally resolve the claims of the Neilan Class against all remaining defendants in the Neilan action (including Arrow) and all proofs of claim filed with this Court by members of the Neilan Class including their assignees and subrogees, counsel for all remaining defendants in the Neilan action, counsel for Arrow, counsel for the Committee and counsel for the Neilan Class held lengthy and intensive negotiations resulting in the execution of a Stipulation of Compromise and Settlement dated December 22, 1987. A true copy of the Stipulation is attached to the Motion as Exhibit "A".

15. The principal terms of the proposed settlement as they impact upon the Arrow estate and its creditors, are as follows:

a. In full settlement and extinguishment of all claims against it in the Neilan action, all proofs of claim filed with this Court by Neilan Class members and their assignees and subrogees, including those few claimants who filed proofs of claim but opted out of the Neilan action after receiving Notice of Class Certification and Filing of Claim Form dated May 29, 1985, and all proofs of claim filed by its co-defendants in the Neilan action, Arrow will segregate the sum of $300,000 from the amount available for distribution to creditors under its plan of reorganization. After distributions under Arrow's plan of reorganization to opt out claimants (which should be minimal), Arrow will pay the balance of the $300,000 to the escrow agent for the Neilan Class in the Neilan action for later distribution to Neilan Class members. Arrow will also dismiss with prejudice its cross-claims against Value, Kols, Segal and Northwestern in the Neilan action.

b. In full settlement of the claims of the Neilan Class against Southeast, Southeast will pay to the Neilan Class the total sum of $400,000. Southeast will also withdraw with prejudice its filed proof of claim against Arrow in the approximate amount of $4 million and will dismiss with prejudice all cross-claims which it has asserted against Value, Kols, Segal and Northwestern.

c. In full settlement and compromise of the claims of Neilan Class against Value, Kols, Segal and Northwestern, these parties will pay to the Neilan Class the total sum of $305,000.00, will withdraw with prejudice their proofs of claim filed against Arrow (or agree not to assert any claim) and will dismiss with prejudice any cross-claims against Arrow and the other defendants in the Neilan action.

d. CNB will withdraw with prejudice its filed proof of claim against Arrow and its cross-claims against the other defendants.

e. The settlement is contingent on the entry of an order and judgment, respective-

ly, by this Court and the District Court approving the settlement.

## BENEFITS OF THE PROPOSED SETTLEMENT

16. The Court finds that the proposed settlement will result in the following substantial benefits to the Arrow estate and its creditors, including members of the Neilan Class (including their assignees and subrogees) who have filed proofs of claim against Arrow:

a. In exchange for a total payment of $300,000, Arrow's estate secures a release from all claims filed by Neilan Class members including their assignees and subrogees. These claims are estimated to total approximately $2.4 million including timely and untimely filed claims. In addition, Arrow's estate secures a release from proofs of claim filed by Southeast, CNB, Neilan, Value and Kols. These claims total approximately $16.5 million.

b. Arrow, its estate and its remaining creditors avoid the expense, delay and risk of continued litigation of objections to proofs of claim filed by the Neilan Class members and their assignees and subrogees and by Arrow's co-defendants in the Neilan action.

c. If this settlement is approved, the Neilan Class members, whose claims are estimated to total approximately $2.4 million, will have a settlement fund available for distribution to them in the Neilan action estimated to total approximately $1.6 million. Accordingly, the estimated recovery by Neilan Class members in the Neilan action by virtue of the settlement could be as high as 66.6%, without the further delay, risk and expense of continued litigation which could last for years and consume hundreds of thousands of dollars. Conversely, if the settlement were not approved, the claims of the Neilan Class members against Arrow's estate would be paid under Arrow's plan of reorganization to the extent they were allowed. It is the opinion of Arrow and the Committee that such claims, if allowed, would be classified as general unsecured claims and, accordingly, would receive a maximum dividend of approximately 25% based on current projections. However, this recovery would be substantially less if the proofs of claim of Arrow's co-defendants in the Neilan action (which are released under the settlement) were ultimately allowed in this case. Finally, of the approximate $2.4 million in claims filed against Arrow's estate by Neilan Class members and their assignees and subrogees, approximately $330,931.10 of these claims were untimely filed and, in the opinion of Arrow and the Committee, would ultimately be disallowed on that basis. Also, numerous other meritorious defenses exist to many of these claims in the opinion of Arrow and the Committee. While the Court does not pass judgment on the ultimate resolution of any potential objections to these claims, it is clear that the proposed settlement would eliminate the necessity for the filing and litigation of numerous objections to such claims. That process would be both expensive and time-consuming for the Arrow estate and its creditors.

17. In connection with approval of the settlement the Court finds further that the class representative, Neilan, and his counsel, adequately represented the class. Neilan's interests were common to the interests of the unnamed class members and Neilan vigorously prosecuted the interests of the class through qualified counsel. The adequacy of Neilan's representation is illustrated best by the results obtained on behalf of the entire class which may receive under the settlement payment of as much as 66.6% of their claims and avoid further significant expense, delay and risk of continued litigation. The Court also commends counsel for the Committee, the Debtor and Southeast Bank, N.A. for their efforts in negotiating and implementing this complicated and favorable settlement.

## LEGAL PRINCIPLES TO BE APPLIED IN EVALUATING THE PROPOSED SETTLEMENT

*Bankruptcy Rule* 9019 provides that after conducting a hearing on notice to creditors, the Bankruptcy Court may approve a compromise or settlement. It has long

been the law that approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion. *See, e.g., In re Jackson Brewing Company,* 624 F.2d 599, 602–03 (5th Cir. 1980); *In re Teltronics Services, Inc.,* 762 F.2d 185, 189 (2d Cir.1985); *In re Prudence Co.,* 98 F.2d 559 (2d Cir.1938), *cert. denied,* 306 U.S. 636, 59 S.Ct. 485, 83 L.Ed. 1037 (1939). Thus, approval of the proposed compromise and settlement is a matter of this Court's sound discretion.

In order to properly exercise its discretion, this Court must be given all of the relevant facts and must evaluate whether the compromise falls below the "lowest point in the range of reasonableness." *See, e.g., In re Teltronics Services, Inc.,* 762 F.2d 185, 189 (2d Cir.1985); *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.1983). As stated by the Fifth Circuit in *In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir.1980):

> To assure a proper compromise the bankruptcy judge must be apprised of all the necessary facts for an intelligent, objective and educated evaluation. He must compare the "terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of T.M.T. Trailer Ferry, Inc. v. Anderson,* (T.M.T. Trailer), 390 U.S. 414, 425, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1, 10, (1968). He must evaluate and set forth in a comprehensible fashion:
>
> (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law,
>
> (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
>
> (3) all factors bearing on the wisdom of the compromise.

*Id.* at 424–25, 88 S.Ct. at 1163, 20 L.Ed. 2d at 9–10. See also *American Employers' Insurance Co. v. King Resources Co.,* 556 F.2d 471 (10th Cir.1977) (detailing a ten factor test employed by the court); *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929) (listing the factors as (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.); *Ashbach v. Kirtley,* 289 F.2d 159 (8th Cir.1961) (following the factors in *Drexel v. Loomis, supra* ); 2A Collier on Bankruptcy ¶ 27.04 (14 Ed. 1978).

In making its evaluation, the Court must not rest its approval upon a resolution of the ultimate factual and legal issues underlying the disputes that are compromised. *See, e.g., In re Teltronics Services, Inc.,* 762 F.2d 185 (2d Cir.1985). As stated by the Fifth Circuit in *Florida Trailer and Equipment Company v. Deal,* 284 F.2d 567, 571 (5th Cir.1960):

> Of course, the approval of a proposed settlement does not depend upon establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable. The probable outcome in the event of litigation, the relative advantages and disadvantages are, of course, relevant factors for evaluation. *But the very uncertainties of litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements. This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty. Parties would be hesitant to explore the likelihood of settlement apprehensive as they would then be that the application for approval would necessarily result in a judicial determination that there was no escape from liability or no hope of recovery and hence no basis for a compromise.* Thus, this Court need not resolve each disputed matter in determining the propriety of the settlement, rather, the Court may, and should, make a pragmatic decision on the basis

of all equitable factors. (Emphasis supplied).

## APPLICATION OF LEGAL PRINCIPLES TO PROPOSED SETTLEMENT

The Court has used the foregoing legal standards as guidance and has considered the evidence presented and the arguments of counsel. Without determining the ultimate legal and factual issues underlying each of the matters to be resolved, the Court finds that the settlement clearly is in the best interest of all creditors of the estate. This is best evidenced by the fact that not a single objection to the settlement was filed with the Court or voiced at the hearing. The settlement will eliminate claims against the estate totalling in excess of $18.9 million in exchange for payment by the estate of only $300,000.00. As a consequence, recoveries under the plan of reorganization by remaining creditors will be maximized. Further, the continued expense, risks and delay which would be incurred by Arrow's estate in the process of the filing and litigation of numerous objections to claims will be eliminated. Finally, the Neilan Class will receive a significant recovery in the Class Action.

For the foregoing reasons, the Court shall approve the settlement in all respects.