United States Court of Appeals,

Eleventh Circuit.

No. 94-8384.

In re:  The GEORGIAN VILLA, INC., Debtor,

The GEORGIAN VILLA, INC., Plaintiff-Appellant,

v.

UNITED STATES of America;  Georgia Department of Revenue, Defendants-Appellees.

June 27, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-01787-CV-WCO), William C. O'Kelley, Judge.

Before CARNES and BARKETT, Circuit Judges, and GIBSON[*], Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

Appellant/Debtor The Georgian Villa, Inc. appeals the district court's judgment affirming the bankruptcy court's order denying Georgian Villa's motion for payment of unclaimed funds.  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d) (1988), and we reverse.

I. BACKGROUND

The relevant facts are undisputed.  The Georgian Villa, Inc. ("Georgian Villa"), is a not-for-profit Georgia corporation which built and operated a hospital in Douglas County, Georgia.  On September 29, 1977, Georgian Villa filed a petition for voluntary Chapter XI bankruptcy.  The hospital property was sold at a price in excess of the corporation's total debt, resulting in a surplus

---

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

of over $700,000.00, which was ordered paid into the registry of the bankruptcy court pursuant to that court's order of March 29, 1989. Following the satisfaction of all administrative costs as well as several previously undiscovered claims, the surplus was reduced to its current amount of approximately $300,000.00.

During the pendency of its bankruptcy proceedings, Georgian Villa remained dormant from the late 1970's until its subsequent reactivation in 1991. On March 4, 1992, Georgian Villa filed a motion to reopen the case and for payment of the unclaimed funds to the debtor pursuant to 28 U.S.C. § 2042 (1988). The bankruptcy court denied Georgian Villa's motion for payment of the unclaimed funds on October 7, 1992, and ordered the unclaimed funds to be paid into the United States treasury. That order reasoned that, although Georgian Villa remained in good standing as a corporation with the Georgia Secretary of State, it was no longer a viable corporation because it had lain dormant until 1991 and had "failed to put forth any evidence that it has any assets or that it is operating and conducting itself as a corporation under the laws of [Georgia]." Because Georgian Villa is a not-for-profit corporation, the bankruptcy court observed that no shareholders existed to whom a distribution could be made. As a result, the bankruptcy court ordered the surplus funds deposited into the United States treasury, concluding that "to return the surplus to the debtor would result in a windfall to the parties in control of the debtor corporation."

Following the bankruptcy court's denial of its subsequent motion for reconsideration, Georgian Villa appealed to the United

States District Court for the Northern District of Georgia.  After a non-evidentiary hearing, the district court affirmed the bankruptcy court's order.  This appeal follows.

II. DISCUSSION

"The whole purpose of the bankruptcy system is to make the bankrupt's property available to his creditors and to give any surplus back to him."  3A Collier on Bankruptcy ¶ 66.03 at 2328, n. 8 (14th ed. 1971).  Georgian Villa contends that it is entitled to the unclaimed funds under § 66 of the Bankruptcy Act of 1898[1] (11 U.S.C. § 106 (1976)).[2]  That section directs the bankruptcy court to distribute any unclaimed funds in accordance with 28 U.S.C. § 2042.[3]  28 U.S.C. § 2042 provides in relevant part that "[a]ny

---

[1]Section 66 (11 U.S.C. § 106):

> **Unclaimed Moneys.** a. Dividends or other moneys which remain unclaimed for sixty days after the final dividend has been declared and distributed shall be paid by the trustee into the court of bankruptcy;  and at the same time the trustee shall file with the clerk a list of the names and post-office addresses, as far as known, of the persons entitled thereto, showing the respective amounts payable to them.  Such moneys and dividends shall be deposited and withdrawn as provided in title 28, United States Code, section 2042, and shall not be subject to escheat under the laws of any State.

[2]This case was filed on September 29, 1977, and is governed by the Bankruptcy Act of 1898, which was repealed in 1978 and replaced by the current Bankruptcy Code.  *See* 11 U.S.C. note prec. § 101 (1988).

[3]28 U.S.C. § 2042.  **Withdrawal**

No money deposited under section 2041 of this title shall be withdrawn except by order of court.

In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so

claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him."

Georgian Villa argues that it has satisfied the requirements of 28 U.S.C. § 2042 and is entitled to the unclaimed funds under the plain language of the statute. The United States, in turn, argues that payment of the surplus funds into the United States treasury was an appropriate exercise of the bankruptcy court's equitable jurisdiction necessary to avoid conferring a windfall on the persons in control of Georgian Villa. As the second court in review of the bankruptcy court's judgment, we review the bankruptcy court's findings of fact under a clearly erroneous standard, and its legal conclusions de novo. *In re Green,* 31 F.3d 1098, 1099 (11th Cir.1994).

We recognize that "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). Bankruptcy courts have relied on equitable principles in "those areas falling within the interstices of the [Bankruptcy] Act; one such area being the proper disposition of the surplus." *Matter of First Colonial Corp. of America,* 693 F.2d 447, 450-51 (5th Cir.1983). The Supreme Court has recognized, however, that "whatever equitable powers remain in the bankruptcy

---

deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States Attorney and full proof of the right thereto, obtain an order directing payment to him.

courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).

In the absence of any express statutory authority governing the disposition of surplus funds, bankruptcy courts have commonly recognized the debtor's right to recover surplus bankruptcy funds under general equitable principles. *First Colonial,* 693 F.2d at 451; *Hendrie v. Lowmaster,* 152 F.2d 83, 85 (6th Cir.1945); *Berl v. Crutcher,* 60 F.2d 440, 444 (5th Cir.1932), *cert. denied,* 287 U.S. 670, 53 S.Ct. 314, 77 L.Ed. 578 (1933); *Johnson v. Norris,* 190 F. 459, 462 (5th Cir.1911). Where the corporate debtor is no longer in existence, bankruptcy courts have similarly employed their equitable power to distribute the unclaimed funds to the shareholders. *First Colonial,* 693 F.2d 451; *Hendrie,* 152 F.2d at 85; *Berl,* 60 F.2d at 444. Where the corporate debtor is still in existence, however, there is no cause to look past the corporate entity to the individual shareholders, and the corporate entity is clearly entitled to the surplus funds. *In re Witherbee,* 202 F. 896, 899 (1st Cir.1913); *see generally,* 6 Remington, Bankruptcy Law, § 2890 (5th ed. 1952) ("If the bankrupt is a corporation, return should be to the corporation rather than to the stockholders....").

Based on this line of authority, the bankruptcy court reasoned, and the district court agreed, that equitable principles should govern the disbursement of the excess funds, despite Georgian Villa's satisfaction of 28 U.S.C. § 2042. Georgian Villa's continuing corporate existence was unchallenged.

Nevertheless, the district court concluded that Georgian Villa was no longer "a viable ongoing entity" because it had lain dormant from the late 1970's until its reactivation in September of 1991 and had failed to come forward with any evidence of its ongoing corporate activity. Because, as a not-for-profit corporation, Georgian Villa had no shareholders to whom the surplus could be distributed, the district court concluded that "equity prevents a distribution of the surplus to the corporation."

We disagree. The very cases relied upon by the district court demonstrate that the exercise of the bankruptcy court's equitable power to disregard the corporate entity is appropriate only where the corporate debtor is no longer in existence. Georgian Villa, however, is not defunct. Under Ga.Code Ann. § 14-3-128 (Michie 1994), Georgian Villa's certificate of existence is "prima-facie evidence that the ... corporation is in existence...." The record is utterly devoid of any evidence rebutting the fact of Georgian Villa's continuing corporate existence. The district court makes much of the fact that Georgian Villa lay dormant from the late 1970's until its reactivation in 1991. We do not. Georgian Villa's dormancy during the pendency of its bankruptcy proceedings does not mean that it is no longer a viable entity and as such no longer entitled to its surplus funds. With all of its assets in the hands of the bankruptcy trustee, Georgian Villa had little choice but to lay dormant until the resolution of its Chapter XI proceedings. Once those proceedings were resolved and its creditors and administrative costs had been paid in full, Georgian Villa properly reactivated its corporate status in order

to claim its surplus funds and resume operations. We do not believe this course of action can or should preclude a corporate debtor from claiming its rightful surplus.

We conclude instead that the plain language of the Bankruptcy Code compels distribution of the surplus to the debtor. Georgian Villa, not its shareholders, is the debtor in this case. It has fully complied with the requirements of 28 U.S.C. § 2042, and is entitled to the surplus under 11 U.S.C. § 106. As this Court observed in *Matter of Grissom,* 955 F.2d 1440, 1449 n. 8 (11th Cir.1992), "equitable principles are insufficient to trump the clear remedial provisions of a bankruptcy statute." Requiring Georgian Villa to come forward with evidence of current corporate activities and operations is clearly inappropriate where, as here, it had no available funds with which to operate, and where, as here, the continued existence of the corporate debtor is unchallenged. We conclude that the use of the bankruptcy court's equitable power to order the deposit of the unclaimed funds into the United States treasury despite Georgian Villa's clear entitlement to those funds under 28 U.S.C. § 2042 was in direct contravention of the Bankruptcy Code and erroneous as a matter of law. Moreover, we are not in accord with the manner in which equitable principles were employed by the bankruptcy court and district court, in that the funds clearly belonged to Georgian Villa, and not to anyone else at that juncture in time. It appears to us that equitable principles alone, in line with the dictates of the Bankruptcy Code, would require that funds belonging to the owner be returned to the owner.

III. CONCLUSION

For the reasons above, we REVERSE the order of the district court and REMAND this matter to the district court with instructions to issue an order directing payment of the unclaimed funds to Georgian Villa.