**In the Matter of RIMSAT, LTD., Debtor.**

**The Holders of Class C Common Stock of Rimsat, Ltd., by its Official Equity Security Holders Committee, Plaintiff,**

v.

**Kauthar Sdn. Bhd., Defendant.**

**Bankruptcy No. 95–10120.
Adversary No. 97–1069.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 24, 1998.

John R. Burns, III, Fort Wayne, IN, for Plaintiff.

John Sieger, Chicago, IL, for Defendant.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

In this Chapter 7 case, it appears that all creditors will probably be paid in full. This adversary proceeding involves a dispute over the distribution of any surplus. The plaintiff is the official equity security holders' committee ("Committee") for the holders of the debtor's Class C common stock. The defendant, Kauthar Sdn. Bhd. ("Kauthar"), holds 1,800 shares of Class D stock, which has a liquidation preference over the Class C shares. By this adversary proceeding, the Committee has asked the court to equitably subordinate Kauthar's equity interest to the equity interests of the Class C shareholders. *See* 11 U.S.C. § 510(c).

The matter is before the court on Kauthar's motion for judgment on the pleadings. Kauthar contends that, pursuant to § 726(a)(6), any surplus remaining after creditors are paid in full belongs to the debtor and not its shareholders. Thus, there is no reason to consider equitable subordination. Since there will be no distribution to shareholders, it also argues that the court lacks subject matter jurisdiction over a proceeding which will not affect the amount available for distribution to creditors or the administration of the bankruptcy estate.

A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim. *U.S. v. Wood,* 925 F.2d 1580, 1581 (7th Cir.1991); *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989). The court is required to view the facts presented in the pleadings and the inferences drawn from them in the light most favorable to the non-moving party. *Flenner v. Sheahan,* 107 F.3d 459 (7th Cir.1997); *Wood,* 925 F.2d at 1581; *Thomason,* 888 F.2d at 1204; *In re Amica, Inc.,* 130 B.R. 792, 796 (Bankr.N.D.Ill.1991). The motion may only be granted if it then appears that under no set of circumstances can the plaintiff be granted relief. *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir.1996), *cert. denied,* 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997).

The court does not agree with Kauthar's contention that it lacks subject matter jurisdiction over this controversy. The argument confuses jurisdiction with the merits of a plaintiff's claim. "[J]urisdiction is the *power to decide.*" *Matter of Chicago, Rock Island and Pacific R. Co.,* 794 F.2d 1182, 1188 (7th Cir.1986)(*Sanborn II* )(emphasis original). That power includes the power to say no. Consequently, just because a plaintiff may not be entitled to the relief it seeks does not mean that the court lacks the jurisdiction necessary to decide the issue.

The scope of the jurisdiction exercised by a bankruptcy court is defined by 28 U.S.C. § 1334. In addition to having jurisdiction over the bankruptcy case itself, 28

U.S.C. § 1334(a), the court also has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Under the test adopted by the Seventh Circuit, a dispute is "related to" a case under title 11 when its resolution affects the amount of property available for distribution to creditors, the manner in which that property is to be distributed, or the administration of the estate. *See Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987); *Matter of Kubly*, 818 F.2d 643, 645 (7th Cir.1987). *See also In re Friendship Medical Center Ltd.*, 710 F.2d 1297, 1302 (7th Cir.1983). While the present dispute does not affect the amount of property available for distribution, it does involve how that property will be distributed. Thus, it comes within the scope of the court's "related to" jurisdiction. Furthermore, since Plaintiff's right to relief is premised upon a specific provision of the Bankruptcy Code, the court also has jurisdiction over it as a "proceeding arising under title 11". *In re Spaulding*, 131 B.R. 84, 88 (N.D.Ill.1990).

Pursuant to § 510 of the United States Bankruptcy Code, the court may

> under principles of equitable subordination, subordinate for the purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest. 11 U.S.C. § 510(c)(1).

The Committee contends that this statute gives the court the ability subordinate Kauthar's equity interest to the interests of debtor's other shareholders. Kauthar disagrees. It argues that the court's concern for how the assets of the estate are distributed after all creditors have been paid in full ends with § 726(a)(6)'s pronouncement that they go to the debtor. The court is inclined to agree with Kauthar.

■ In cases under Chapter 7, the distribution of property of the estate is governed by § 726 of the United States Bankruptcy Code. After payment of the different kinds of claims listed in the first five paragraphs of § 726(a), anything that remains goes "to the debtor." 11 U.S.C. § 726(a)(6). "The Code goes no further respecting the rights of parties who are owners of the debtor." *In re Riverside–Linden Inv. Co.*, 925 F.2d 320, 323 (9th Cir.1991).

The ultimate question raised by this adversary proceeding thus becomes when, if ever, in a Chapter 7 case, should the bankruptcy court look beyond the mandate of § 726(a)(6) and involve itself in determining the relative rights of a corporate debtor's shareholders to any assets that might remain after creditors are paid in full? Admittedly, § 510(c) appears to recognize the possibility, because it applies to cases pending under all chapters of the Bankruptcy Code, 11 U.S.C. § 103(a), and it does speak of subordinating allowed interests. Yet, simply because § 510(c) applies to all chapters and mentions the equitable subordination of allowed interests does not mean that the court will be concerned with doing so in every chapter.

■ In cases under Chapter 11 and 12, the opportunity to equitably subordinate the interests of a debtor's equity holders may be necessary to reorganize or deal with the debtor's capital/equity structure. Under Chapter 7, however, orderly liquidation and not reorganization is the goal. Rarely are there enough assets to fully pay creditors, much less provide a return to the debtor or its equity security holders. Thus, in the typical Chapter 7 case, the court will not be concerned with the competing claims of a debtor's equity security holders because there will be nothing left to which they might lay claim.[1]

Perhaps out of recognition that the cases in which the estate will be solvent, so that equity holders might possibly receive a distribution, are extremely rare, the Bankrupt-

---

1. In Chapter 7, the question of equitable subordination and the interests of equity security holders more commonly involves an equity holder's attempt to disguise its interest as debt, so that it may share in the distribution to creditors. *See Matter of Lifschultz Fast Freight*, 132 F.3d 339 (7th Cir.1997); *Kham & Nate's Shoes No. 2, Inc.* v. First Bank of Whiting, 908 F.2d 1351 (7th Cir.1990). Section 510 permits the bankruptcy court to foil this queue-jumping, by bumping the "claims" of equity holders back to the end of the line where they belong. *See Lifschultz Fast Freight*, 132 F.3d at 343–44.

cy Code shows little or no concern for their interests in Chapter 7 cases. This is especially so by comparison to the attention they receive under Chapter 11. For example, Chapter 11 contemplates the possibility for the appointment of committees for both creditors and equity security holders, 11 U.S.C. § 1102(a), while Chapter 7 offers only the possibility of a creditors' committee. 11 U.S.C. § 705. Similarly, there is really no mechanism for filing a proof of interest in Chapter 7 cases. Bankruptcy Rule 3003 addresses the time for filing both proofs claim and proofs of interest in Chapter 11 cases; Rule 3002(c), which addresses the essentially same issue for Chapter 7 cases, speaks only of filing claims. These excerpts from both the statute and the applicable rules of procedure implicitly seem to confirm what § 726(a) explicitly says, the Bankruptcy Code simply does not contemplate that equity security holders will share in the distribution of the estate in cases under Chapter 7—any surplus is to be distributed to the debtor.

In contrast to the current Bankruptcy Code's specific direction that surplus funds be distributed to the debtor, the former Bankruptcy Act made no provision for the distribution of any surplus that might remain after creditors had been paid in full. In the absence of any statutory authority governing the disposition of these funds, the courts relied upon equitable principles to recognize the debtor's right to recover them. *See* 6 Remington on Bankruptcy, § 2890, at 509 (5th Ed.1952).

> [I]nsolvency, inability to pay his debts in full, is the basis of the whole proceeding, and the Act of Congress in all its provisions has reference to that situation. . . . The act did not contemplate, and therefore did not provide for the disposition of, a balance in the hands of the trustee after the payment of all creditors in full. In such a situation, where in fact all the creditors are paid in full, every principle of equity would require the payment of such balance to the bankrupt, not because of any provision in the Bankruptcy Act, but because equity would clearly demand it. *In re Lenox*, 2 F.2d 92, 93 (W.D.Pa.1924). *See also Johnson v. Norris*, 190 F. 459, 462 (5th Cir.1911).

Thus, in corporate cases, "[t]he surplus would belong to the debtor, not its stockholders. The trustees would hold it for the bankrupt, from whom it came to them." *In re Witherbee*, 202 F. 896, 899 (1st Cir.1913).

A "corollary" to this equitable principle developed which "recognize[d] that exceptional circumstances of equity may dictate that surplusage pass to one other than the bankrupt." *Matter of Wolverton*, 491 F.2d 361, 365 (9th Cir.1974). One of those circumstances was where a corporate debtor was no longer in existence. In that situation, a distribution of any surplus might be made to the corporation's shareholders. *In re Georgian Villa, Inc.*, 55 F.3d 1561, 1563 (11th Cir. 1995); *Hendrie v. Lowmaster*, 152 F.2d 83, 85 (6th Cir.1945). Relying upon this line of authority, which was developed under the former Bankruptcy Act, the Committee argues that Rimsat is essentially defunct, has no independent management and no longer conducts any business. It then contends that this presents a situation in which the distribution of any surplus should be made to the debtor's shareholders, rather than to the debtor. Thus, it becomes appropriate to consider equitably subordinating Kauthar's interest to the interests of other shareholders.

Even though the bankruptcy courts were, in limited circumstances, willing to use their equitable power to distribute surplus funds to a corporation's shareholders, rather than to the corporate debtor, that does not mean that they were also willing to resolve disputes between shareholders over who was entitled to what. Quite to the contrary, they seem to have consciously eschewed doing so.

> [I]t is outside the scope of bankruptcy to go into conflicting claims of stockholders or as to who is entitled to the assets of a dissolved corporation, and in such circumstances, the bankruptcy court may simply hold the assets or provide for their custody pending determination of rights by another tribunal. 6 Remington, § 2890 at 510.

Thus, in *First Colonial Corporation of America*, 693 F.2d 447 (5th Cir.1982), the court acted properly in directing the trustee to deliver surplus assets to a state court receiver. Similarly, in *Berl v. Crutcher*, 60 F.2d

440 (5th Cir.1932), the district court acted properly in appointing a receiver to whom the bankruptcy trustee could deliver any surplus, pending resolution of the competing claims of shareholders. Consequently, although the practice under the former Bankruptcy Act may have developed an equitable principle which permitted a distribution of surplus funds to a corporation's shareholders, it does not seem that the principle extended to the point where the bankruptcy courts would also resolve disputes between those shareholders.

■ Unlike the former Bankruptcy Act, the current Bankruptcy Code is quite specific as to the disposition of surplus assets. They are to go "to the debtor." 11 U.S.C. § 726(a)(6). In the face of this statutory directive, it would seem that the Act cases which recognized the possibility of making such a distribution to a corporate debtor's shareholders would have little, if any, continuing vitality. Even then, they did not go so far as to permit the bankruptcy court to resolve shareholder disputes. Accordingly, this court's inquiry may begin and end with the plain language of the statute; "where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)(quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

■ Pursuant to § 726(a)(6), any property of the bankruptcy estate remaining after all creditors have been paid in full is to be distributed to the debtor—not to its shareholders. Since there will be no distribution to shareholders, there is no reason to consider equitably subordinating Kauthar's interest to that of debtor's other shareholders. Kauthar's motion for judgment on the pleadings will be granted and this adversary proceeding will be dismissed. An order doing so will be entered.