**In re AIR SAFETY INTERNATIONAL, L.C. and Camber Flight Simulation, L.C., Debtors.**

**Nos. 99–36290–BKC–SHF, 00–30087–BKC–SHF.**

United States Bankruptcy Court, S.D. Florida.

June 2, 2005.

est holder against the Debtor's motor vehi-

cles.

Ira C. Hatch, Vero Beach, FL, for debtor.

Michael R. Bakst, West Palm Beach, FL, for trustee.

### MEMORANDUM OPINION GRANTING AMENDED MOTION TO APPROVE STIPULATION TO COMPROMISE CONTROVERSY BETWEEN TRUSTEE AND EQUITY HOLDER; AND TO MAKE DISTRIBUTION OF EQUITY HOLDERS AND DENYING GMGRSST, LTD.'S MOTION TO COMPEL TRUSTEE TO DISTRIBUTE SURPLUS ASSETS TO THE DEBTOR PURSUANT TO 11 U.S.C. § 726(A)(6)

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came before the Court for hearing on March 30, 2005 upon the Amended Motion to Approve Stipulation to Compromise Controversy Between Trustee and Equity Holder; and to Make Distribution to Equity Holders (C.P. 672), filed by Deborah C. Menotte, Chapter 7 Trustee, and upon the Motion to Compel Trustee to Distribute Surplus Assets to the Debtor Pursuant to 11 U.S.C. § 726(A)(6) (C.P. 670), filed by Alan Madsen, as trustee for GMGRSST, Ltd. The Court, having considered the evidence presented, the candor, credibility and demeanor of the witnesses, the argument of counsel, and the record herein, and being otherwise fully advised in the premises, issues this Memorandum Opinion incorporating its findings of fact and conclusions

of law pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7052.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and Bankruptcy Rule 9019. Bankruptcy Rule 9019 provides that after conducting a hearing properly noticed to all creditors, the Court may approve a compromise or settlement.

## PROCEDURAL BACKGROUND

This case was commenced with the filing of a Chapter 11 petition on December 23, 1999 by the Debtor, Air Safety International, L.C. ("Air Safety"). Subsequently, on January 11, 2000, a Chapter 11 petition was filed by the Debtor, Camber Flight Simulation, L.C. On February 25, 2000 the Court entered an order for joint administration (hereinafter both Debtors shall be collectively be referred to as "Debtor"). Subsequently, both cases were converted to Chapter 7 proceedings on March 21, 2000, and Deborah Menotte was appointed the chapter 7 trustee. Thereafter, on November 30, 2001 the Court entered an order substantively consolidating both estates (C.P.155). During the course of the administration of this estate, the trustee litigated a state court action against Lockheed Martin Corporation, which ultimately resulted in a $10,000,000 settlement. After payment of attorney's fees to the Trustee's Special Counsel, the bankruptcy estate received $6,000,000 for the benefit of creditors.

In July 2002, a Stipulation for Settlement (Trustee's Ex. 2—3/30/05 hearing on Motion to Approve Stipulation to Compromise Controversy) was executed by the Trustee, Alan and Becky Madsen (the "Madsens"), MSR, Inc.("MSR"), GMGRSST, Ltd. ("GMGRSST"), Madsen Automotive Group ("MAG"), Joe G. Coyk-

endall ("Coykendall"), Camber Corporation ("Camber"), and Robert King ("King")(collectively referred to as the "Parties"). Pursuant to the Stipulation, the Parties settled all administrative claims, secured claims and unsecured claims. Specifically, paragraph 10 of the Stipulation provides for the disposition of any remaining funds after payment of all other allowed claims against the estate:

> The first $2,280,000.00 of the remaining funds shall to be distributed by the Trustee to the following parties based upon the following percentages: 1) The Madsens shall receive 53.48%; 2) Camber shall receive 13.13%; 3) King shall receive 26.75%; and 4) Coykendall shall receive 6.57%. All sums greater than the first $2,280,000.00 shall be distributed by the Trustee to the following Parties based upon the following percentages: the Madsens shall receive 79.4155%; Camber shall receive 14.0145%; King shall receive 0%; and Coykendall shall receive 6.57%. It is also agreed that the Madsens shall be entitled to an assignment from the Trustee, at the close of the case, of the remaining assets of the Debtors, including the right to use the names of the Debtors, exclusive of Camber Flight, the goodwill, and any remaining unadministered intellectual property. Such assignment shall be only of the Trustee's right, title and interest, without warranties or representations of any type, "as is, where is".

The Trustee and all of the Parties concurred in the filing of their Joint Motion to Approve Compromise and Settlement of Certain Unsecured Claims; Joint Motion to Commence Immediate Interim Distribution on May 27, 2004 (C.P. 552), seeking approval of the Settlement Agreement. However, the Parties requested that the approval of the distribution pertaining to the equity holders (Stipulation for Settle-

ment Page 3, Paragraph 10) be held in abeyance until the final disposition of the Trustee's objection to the claim of A. Patrick McSweeney. The Court did enter an Order Granting Joint Motion to Approve Compromise and Settlement of Certain Unsecured Claims; Joint Motion to Commence Immediate Interim Distribution (C.P. 617) on August 2, 2004, which Order allowed certain of the disputed claims against the estate, and further authorized the Trustee to file a motion to authorize an interim distribution to the holders of allowed claims, excluding the holders of equity claims. On October 5, 2004, after notice and hearing, the Court approved a settlement between the Trustee and A. Patrick McSweeney, whereby Mr. McSweeney's claim was allowed as a general unsecured claim in the amount of $50,000.00. All allowed creditors' claims, with the exception of unpaid claims for administrative fees and expenses, have now been paid in full, and it is the Trustee's position that the Stipulation for Settlement, in its entirety, is ripe for court approval.

### POSITION OF GMGRSST

The argument in opposition to the approval of the Stipulation for Settlement, as presented at the March 30, 2005 hearing by GMGRSST, is two-fold. Firstly, GMGRSST, through Alan Madsen in his capacity as co-trustee of fourteen trusts that own and control GMGRSST, asserts that it is 11 U.S.C. § 726(a)(6) which is dispositive of the persons or entities who are to receive the distribution of surplus assets, and not the Stipulation for Settlement. GMGRSST does not dispute that a Stipulation for Settlement was reached in July 2002. Furthermore, GMGRSST does not dispute that it was a party to that agreement. In addition, there has been no argument that the settlement was unreasonable or somehow unenforceable. Sec-

ondly, GMGRSST asserts that, because it has been required to wait five years for distributions detailed in the Stipulation for Settlement, the delay has been unreasonable. Therefore, according to GMGRSST, the contract should be deemed null and void because the Trustee did not seek court approval and disburse on a timely basis. In essence, GMGRSST is asking the Court to deem the Stipulation for Settlement as a breached contract and distribute the surplus assets to the debtor pursuant to 11 U.S.C § 726(a)(6).

GMGRSST cites to *In re The Georgian Villa, Inc.*, 55 F.3d 1561, 1563 (11th Cir. 1995) as the authority dictating that the distribution of surplus assets should be made to the debtor. *Georgian Villa* involved a not-for-profit business that, although dormant, had remained in good standing as a corporation with the Georgia Secretary of State. Given the facts of *Georgian Villa*, the court concluded that the corporate debtor remained in existence throughout the pendency of the bankruptcy and therefore, the plain language of the Bankruptcy Code compelled distribution of the surplus to the debtor. *Id.* The court did acknowledge that where the corporate debtor is no longer in existence, bankruptcy courts could utilize their equitable power to distribute the unclaimed funds to the shareholders. *Id. See also, In re First Colonial Corp.*, 693 F.2d 447, 451 (5th Cir.1982).

### STATUS OF AIR SAFETY

In the case before the Court, there is no issue as to whether Air Safety continues to exist in good standing—it does not. This bankruptcy case began as a chapter 11 proceeding. The case was converted to a chapter 7 proceeding and the Trustee was subsequently appointed on March 24, 2000. There has been no evidence offered by Mr. Madsen to establish that Air Safety contin-

ued to remain in good standing throughout the pendency of the bankruptcy. To the contrary, Mr. Madsen acknowledges that Air Safety currently is not active as a corporation, and asserts that the Trustee allowed the corporate charter to lapse. In opposition to Mr. Madsen's claim the Trustee testified that the corporate charter of Air Safety lapsed before she was appointed and that the corporation has not since been reinstated. Therefore, it is the Trustee's contention that the corporate charter of Air Safety lapsed while the corporation was in the control of the Madsens. Considering the testimony of both Mr. Madsen and the Trustee, the Court is of the opinion that the plain language of 11 U.S.C § 726(a)(6) does not apply since the corporate debtor is no longer in existence.

### POSITION OF THE TRUSTEE

The Trustee is seeking approval of the Stipulation for Settlement in its entirety. On March 30, 2005, the Trustee testified as to certain events relating to the execution of the Stipulation for Settlement. In July 2002, shortly before the signing the Stipulation for Settlement, it appears that GMGRSST and the Madsens sought reassurance from the Trustee that interim distributions would be made on a timely basis following execution of the agreement. In response to that inquiry, the Trustee, through her attorney, sent a letter to counsel for GMGRSST and the Madsens indicating that it was the intention of the Trustee to make distributions on a timely basis (Letter to Ira Hatch, Pl.'s Ex. 16, ¶ 1). However, the Trustee explained that there remained claim objections and various claims pending that affected the Trustee's ability to make immediate distributions (Letter to Ira Hatch, Pl.'s Ex. 16, ¶ 3). Thereafter, on July 17, 2002, the Madsens signed the Stipulation for Settlement in both their individual capacity and

on behalf of GMGRSST (Stipulation for Settlement, Pl.'s Ex. 2, Page 8).

At the March 30, 2005 hearing, the Trustee testified to the fact that the delay in seeking court approval of the entire Stipulation for Settlement rested upon the language contained in the Stipulation for Settlement that made approval contingent upon the settlement of the Patrick McSweeney claim.

> The Parties to this Stipulation agree that upon approval of this Stipulation by the Court this shall resolve their objections to the aforementioned claims as explained above, and, that they shall cooperate with the Trustee and assist the Trustee with the claims objection process and, further will assist her with the closing of these cases. If the Court does not approve the Stipulation, these Parties reserve their respective claims and objections in their entirety. In the event that this Stipulation is not approved by the Court, it shall be deemed null and void. The Parties understand and agree that this agreement is contingent upon the Trustee's objection to the equity claim of Patrick McSweeney being sustained whereby the Court would find that Patrick McSweeney does not hold any equity interest within the Debtors.

Stipulation for Settlement, Pl.'s Ex. 2, Page 4, Paragraph 11.

The Court entered its Memorandum Opinion Sustaining Trustee's Amended Objection to Claim Number 50 of A. Patrick McSweeney on March 26, 2004 (C.P. 509). After various motions, and after notice and hearing, a final resolution of the A Patrick McSweeney claim was reached with the entry of the October 5, 2004 Order Approving Stipulation to Compromise Controversy between the Trustee and Creditor, A. Patrick McSweeney (C.P. 655). The Trustee then sought court ap-

proval of the remainder of the Stipulation for Settlement, which is now before the Court.

### SETTLEMENT AGREEMENT

■ In determining whether to approve the Stipulation for Settlement, the Court first must determine whether a valid settlement agreement was reached. A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law. *Schwartz v. Florida Board of Regents,* 807 F.2d 901, 905 (11th Cir. 1987). In order to establish the basis of a contract, there must be common intent, or a "meeting of the minds" as to the subject matter of the settlement. *Kuharske v. Lake County Citrus Sales,* 44 So.2d 641 (Fla.1949). As long as an intent to settle the essential elements of the cause can be established, it does not matter that the agreement is not fully executed, as even oral settlements have been fully recognized and approved by the courts of Florida. *Dania Jai–Alai Palace, Inc. v. Sykes,* 495 So.2d 859 (Fla. 4th D.C.A.1986). Furthermore, it is well-settled public policy that settlement agreements are "highly favored and will be enforced whenever possible." *Robbie v. City of Miami,* 469 So.2d 1384, 1385 (Fla.1985).

■ *Sub judice,* there has been no evidence to contradict that a settlement agreement was reached and signed by all of the Parties, including GMGRSST. The testimony of both Mr. Madsen and the Trustee establishes that the Parties intended to settle the matters under the terms as set forth in the Stipulation for Settlement, subject only to the approval of the bankruptcy court. The Court is not persuaded by the argument made by GMGRSST that the Stipulation for Settlement should be deemed null and void. While GMGRSST argues that the Trustee's delay in seeking court approval-is a breach of contract, the Court finds that the Trustee acted appropriately based on the circumstances surrounding the pending claims. Furthermore, the Court finds no language in the Stipulation for Settlement to indicate a time frame in which the Trustee was required to make distributions. To the contrary, the Stipulation for Settlement clearly states that pending claims exist that must be settled before the agreement can be approved by the court. (Stipulation for Settlement, Pl.'s Ex. 2, Page 4, Paragraph 11). In addition, the language of the Stipulation for Settlement contains a provision that clearly states that there are no other agreements or modifications except as set forth in the Stipulation for Settlement (Stipulation for Settlement, Pl.'s Ex. 2, Page 4, Paragraph 12).

■ "It has long been the law that approval of a settlement in a bankruptcy proceeding is within the sound discretion of the court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion." *In re Arrow Air,* 85 B.R. 886, 890–891 (Bankr. S.D.Fla.1988). The Court must consider four factors in deciding whether to approve a proposed settlement: (a) the probability of success in the litigation; (b) the difficulties to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay surrounding it; and (d) the interests of the creditors. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544 (11th Cir.1990). In evaluating a proposed settlement, the Court must make an informed, independent judgment that the compromise is fair and equitable. The judgment requires consideration of all relevant facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated. *Pro-*

*tective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968).

The Court having carefully reviewed the record of this case, and having considered the four factors discussed *In re Justice Oaks II Ltd.,* determines that the Stipulation for Settlement should be approved. With the exception of GMGRSST, a signatory to the Stipulation for Settlement, no objections have been filed by creditors or equity holders. Accordingly, the Court **approves** the Stipulation for Settlement in its entirety as a binding and enforceable agreement, **grants** the Trustee's Amended Motion to Approve Stipulation to Compromise Controversy between the Trustee and Equity Holders; and to Make Distribution to Equity Holders, and **denies** the Motion by Alan Madsen to Compel Trustee to Distribute Surplus Assets to the Debtor.